## The State of Minnesota *vs.* Charles Timmens.

### APPEAL FROM THE DISTRICT COURT OF HENNEPIN COUNTY.

An allegation in an indictment that the offence was committed in a certain county, is sustained by proof of its having been committed on a vessel which passed through that county, on a voyage during which the act took place.

Certain acts of the Legislature in attempting to make changes in the boundaries of Hennepin county, define impossible boundaries which cannot be followed. This court will not guess at the meaning of those boundaries, so as to decide the intent of the Legislature.

Where a name appears to be a foreign one, a variance of a letter, which, according to the pronunciation of that language does not vary the sound, is not a *misnomer,* where it appears that the Defendant could not have been misled or prejudiced by the misspelling.

A conviction cannot be had, under the Statute creating the offence of adultery under promise to marry, upon the testimony of the woman seduced, unless she is corroborated upon every material point necessary to the perfection of the offence, to wit: the promise to marry; the seduction under the promise, and the previous chaste character of the party seduced. And this *corroboration* does not require that the proof of these facts shall be sufficient in itself to establish them independent of the testimony of the woman, but the Satute requires proof of those circumstances which usually form the concomitants of the main fact sought to be established, which circumstances should be sufficiently strong in themselves, and pertinent to the case, to satisfy the jury of the truthfulness of the witness in her testimony on the principal facts.

Upon an indictment for adultery, the Court charged the jury, "that if they found that the prose-cutrix was not unchaste in principle, but in her former intercourse with the prisoner had yielded because of her affection for him, and because of her trust in his faith that he would marry her, and on her discovery that he disappointed her, had reformed from principle at and before the time charged, then in the eye of the law she was a chaste person at the time of the commission of the act; and if done under a promise of marriage, and the facts are established by competent and satisfactory evidence, and you find the other facts true, you will find the Defendant guilty;"—*Held* to be correct.

Points and authorities of the Plaintiff in Error :

*First.*—The question concerning the marriage of the Defendant subsequent to the seduction was properly put to the witness Anna Fouria—

1. To show that it was beyond the power of the Defendant to fulfill his promise of marriage with the witness.

2. As showing the relation of the parties to each other.

3. To show the intent of the Defendant.

*Second.*—The questions in regard to the preparations for marriage, and the consultations with the parents of the witness Anna Fourai, were properly put to the witnesses Margaret and Joseph Fouria.

1. To corroborate the evidence given by the prosecutrix.

2. To show that she was under a promise of marriage with the Defendant at the time of the seduction.

3. To show that she relied on such promise.

*Third.*—The variance between the name of Anna Fouria, as laid in the indictment, and that proved on trial is immaterial.

1. The time, place, circumstances and description of parties set forth in the indictment clearly identify the act, and the person Anna Fouria, bringing the variance of name as alleged and proved on trial, within the *Compiled Statutes, Sec.* 73, *p.* 760, the offence involving the commission of a private injury. 4 *Blackstone Com. p.* 6.

*Fourth.*—The court charged the jury that if they find the offence was committed on a boat upon the Minnesota river at the time charged, the court has jurisdiction. And they were to determine from the evidence before them, whether the offence was committed upon the Minnesota river within the limits of Hennepin county; which charge was correct for the reason—

1. That if the offence was committed within the limits of Hennepin county, whether upon the Minnesota river or elsewhere, the court obtained jurisdiction.

2. If the crime was committed upon a boat while navigating the Minnesota river, and during the trip, the boat passed through any part of Hennepin county, (of which fact the jury were the judges from the evidence before them), the court acquired jurisdiction under *Compiled Statutes, Section* 89, *page* 761.

3. The Minnesota river washes Hennepin county from Fort Snelling to Shakopee—the boundaries of the county being established by the act of March 6, 1852. *Compiled Statutes, p.* 77, *Sec.* 22, *and the Act of Feb.* 25, 1856; *Compiled Statutes, p.* 93, *Sec.* 126.

4. The resolution passed February 25, 1856, amendatory of the act aforesaid, passed on the same day, is void, for the reason—

(1.) It does not explain, or correct the clerical error in the original act, but creates new boundaries.

(2.) The law defining the boundaries of the county must be

a general law, and no law of that character can be created by resolution.

(3.) A resolution is used only to express the opinion, direction, order, or as the basis of a bill or proceeding of a legislature, and never as a general law. *See Cushing Legislative Ass. p.* 314, 315 *and* 799, 800, 801.

(4.) It never passed through the regular stages prescribed by the rules of both branches of the legislature for the passage of laws.

(5.) It never was engrossed or enrolled.

(6.) It describes an impossible boundary.

(7.) The act and the resolution passed on the same day, the former perfected, the latter imperfected by not being engrossed, therefore the former must be considered as the will of the legislature, and that the latter was never intended to become a law.

(8.) A general act of the legislature cannot be repealed, modified, amended, nor changed by resolution.   Hence if the resolution in any way does either with the act passed February 25th, 1856, (*Compiled Statutes, page* 93, *Sec.* 4,) it is a nullity.

*Fifth.*—The charge of the court in reference to the previous illicit intercourse of the Defendant with the witness Anna Fouria, with the qualification, " that if she had reformed and was chaste at the time of the commission of the offence, the jury might convict," was correct. *Carpenter vs. The People*, 8 *Barb.* 608, 609 ; *Crosier vs. The People*, 1 *Parker C. R.* 457. It is sufficient to show that the parties were under a promise of marriage.   *The People vs. Alger*, 1 *Parker C. R.* 335.

*Sixth.*—Whether the witness Anna Fouria was chaste at the time of committing the offence, was a matter of fact properly left by the court for the jury to determine from the evidence before them.   But—

1. There was no evidence to show that the witness Anna Fouria was unchaste at the time of the seduction, and until there was such proof, the burden was upon the Defendant to prove a general unchaste character. *Safford vs. The People*, 1 *Parker C. R.* 479.

2. If the witness had ceased to have intercourse with the

Defendant, and no general bad character has been proved, it is presumptive evidence of reformation in character.

And the reason given by the witness for leaving the Defendant does not show a want of principle but that in their former intercourse she yielded on account of their promise of marriage.

Points and authorities of Defendant:

*First.*—The court below erred in allowing the question " State whether he (Defendant) has married since that time ?" to be put to the witness Anna Fouria. Because it was immaterial.

*Second.*—The court also erred in allowing the question as to whether the witness Anna Fouria had made preparations for marriage and consulted her parents in regard to it, to be put to the witnesses Joseph and Margaret Fouria. They were immaterial.

1. Those facts could not tend to prove a promise by Defendant before the time of the commission of the alleged offence, or the fact of illicit connexion, or that the witness Anna relied on any promise.

*Third.*—The variance between the name of the prosecutrix as laid in the indictment and as proved on the trial, is fatal. *See* 1 *Arch. Crim. Pls.* 63 *and note;* 2 *Russell on Crimes* 795.

The case does not come within *Section* 73, *page* 547 *of the Revised Statutes.*

1. Because the offence does not involve the commission of a private injury.

2. The offence is not described with sufficient certainty in other respects to identify the act. *The case of State vs. Boylston, decided at last term.*

*Fourth.*—The court below erred in charging the jury " that if they find that the offence was committed on a boat upon the Minnesota river at the time charged, the court has jurisdiction." And in refusing to charge " that if there is no evidence that the offence was committed within the limits of Hennepin county, or within one hundred rods of the boundary line of said county, no conviction can be had in said county."

State of Minnesota *v.* Timmens.

1. The only cases in which the offence may be alleged to have been committed in a county, are—

(1.) Where the offence was there committed. (2.) Cases within *Section 7, page* 523 *of the Revised Statutes.*

2. In cases under *Section* 89, *page* 761 *of the Compiled Statutes,* the indictment should state where the offence was committed, and state other facts to show that the court can try the case under the provisions of that section.

3. But the case is not within that section for there is no evidence that the trip or voyage terminated in that county, or that the vesel was navigated during or in the course of the trip through any part of that county.

*Fifth.*—The court erred in charging the jury that the acts of Anna Fouria in making preparation for marriages, going to show that she relied on a promise of marriage, is competent evidence to show that she relied on such promise at the time charged in the indictment.

*Sixth.*—The court also erred in charging " that if the jury find that Defendant had carnal intercourse with the witness at the time and place in the indictment charged under a promise to marry, the jury may convict, although she may have had carnal connexion with the Defendant previously, provided she had reformed and was chaste at the time of the commission of said offence."

The act in the charge described is not seduction. To seduce is " To draw aside or entice from the path of rectitude and duty, to corrupt, to deprave, to entice to a surrender of chastity."— *Webster.*

A man may have carnal intercourse with a woman under a promise of marriage, without seducing her, she may have seduced him, have enticed him to do the act, in which case it would be, on his part, only fornication.

*Seventh.*—The prosecuting witness was not at the time of committing the alleged offence a woman of previous chaste character.

1. She had for several months and up to two or three months before that time been in the habit of having frequent illicit connections with Defendant. Having thus became unchaste, she would not be the subject of the offence, unless she had

subsequently reformed and become chaste in *conduct and prin-ciple.*

2. It was incumbent on the prosecution to prove that she had reformed at the time of the alleged offence, and that she had become chaste not only in conduct, but in principle.  *See Carpenter vs. People,* 8 *Barbour* (*N. Y.*) *R.* 603.

3. Proof of her having discontinued those acts of illicit con-nection, and having abstained from them for a time, would not be sufficient, without proving that she discontinued and ab-stained from principle.   There is no proof that she did so from principle; but on the contrary that she did so because Defend-ant had disappointed her and she thought she could not trust to his promise.   That was not reformation.   She might have been chaste in conduct, but certainly was not in principle.

*Eighth.*—To warrant a conviction there should have been other evidences than that of the prosecuting witness, of her previous chaste character ; she should be supported by other evidence as to every fact necessary to be alleged and proved. *See Revised Statutes,* 519, *Sec.* 6.

A. C. MORRILL, Counsel for the State.

JAMES GILFILLAN, Counsel for the Defendant.

*By the Court.*—FLANDRAU, J.   The indictment charges the offence to have been committed in the County of Hennepin. The proof shows that it was committed on board of a steam-boat while navigating the Minnesota river, and while the boat was in that part of the river which forms the boundary line of Hennepin county.   This clearly brings the case within that part of *Section* 89, *page* 761 *of the Compiled Statutes,* which provides that " When any offence shall have been committed within this Territory, (State) on board of any vessel navigat-ing any river or lake, an indictment for the same may be found in any county through which or any part of which such vessel shall be navigated during or in the course of the same voyage or trip."   The boat was proven to have been navigated through Hennepin county during the same voyage or trip on which the offence was committed.   In such case the Statute is satisfied

by alleging the offence to have been committed in the county of Hennepin. The principal question upon this branch of the case, is whether the Judge erred in the charge he gave to the jury. His charge amounts to this : A refusal to charge that the crime must have been committed within the limits of Hennepin county ; and a positive charge, that "if they found the offence to have been committed on board a boat on the Minnesota river at the time charged, that the court had jurisdiction." And also the further charge, "that the jury might determine from the evidence before them whether the offence was committed upon the Minnesota river within the limits of Hennepin county." Although this charge as it appears in the bill of exceptions, is not as clear upon this point as could have been desired, yet being of the opinion that it was sufficient for the boat to have passed through Hennepin county on that trip, to have conferred jurisdiction upon the courts of that county, we cannot see that the Defendant was in any way prejudiced by the charge. An allegation in the indictment that the offence was committed in a certain county, is sustained by proof of its having been committed on a vessel which passed through that county on a voyage, during which the act took place.

The fourth section of the Act of February 25, 1856, attempting to make some change in the boundaries of Hennepin county, and the Joint Resolution of the same day probably designed to correct the defects of the act, both define impossible boundaries, which cannot be followed. It would require a clear act of legislation on our part, to decide that the legislature meant in these acts, one thing more than another, and we feel that it is far safer to disregard both than to set so dangerous an example as an arbitrary guess at their meaning would be.

There was no *misnomer*. The girl was a French Canadian, and the Defendant spoke French, as appears from the evidence. "Where a name appears to be a foreign one, a variance of a letter which, according to the pronunciation of that language, does not vary the sound, is not a *misnomer. Petrie vs. Woodworth*, 3 *Cains R.* 219. The name "*Forest*" is pronounced in French as if it was spelled "*Fo-ray*," which is almost iden-

tical in sound with the name of the girl as proven on the trial, which was " Fourai," and the Christian name being the same the Defendant could not have been misled or in any manner prejudiced by the misspelling.

The Statute creating the offence of adultery under promise to marry is in these words:

" Any unmarried man who under promise of marriage  * * * shall seduce and have illicit connexion with any unmarried female of previous chaste character, shall be guilty of a misdemeanor," etc., " but no conviction shall be had under the provisions of this section on the testimony of the female seduced unsupported by other evidence."

A conviction cannot be had under this Statute upon the testimony of the woman seduced unless she is corroborated upon every material point necessary to the perfection of the offence, to wit: the promise to marry, the seduction under such promise, and the previous chaste character of the party seduced.

Now it cannot be intended that by being corroborated, the statute means there shall be proof of these facts, sufficient in itself to establish them independently of the testimony of the girl, as that would render the Statute practically null. Parties seldom seek publicity in such matters. From their nature they transpire in secret, and it is only by accident that any positive proof can ever be brought to bear upon them except through the parties themselves. The corroboration therefore intended by the Statute, is proof of those circumstances which usually form the concomitants of the main fact sought to be established, which circumstances should be sufficiently strong in themselves, and pertinent in their bearing upon the case, to satisfy the jury of the truthfulness of the witness in her testimony on the principal facts. In this case the woman testified positively to the promise to marry, and the seduction which followed, and also that she had never had illicit intercourse with any man other than the Defendant, and with him only under and by reason of his continual and repeated promises to marry her. In the fact of the promise she is supported by both her parents, who testify to the admissions of the Defendant, his admonitions to their daughter to be faithful to her

vow to him, at the time another man wished to marry her. Also by the consultations she had with them concerning the marriage, and her preparations for the same, all of which were ·competent evidence in corroboration of this fact. In the fact of the illicit connection with the Defendant, she is also supported by her father, who testifies to an intimacy between them, and all the circumstances of their being on the boat at the time and place alleged. It also appears that the Defendant was the Captain of the boat, a circumstance which could be considered as affording facilities for the act. As to her character, in addition to her own statement of facts, she is shown to have been a constant inmate of her parents' house, and was during the time, sought in marriage by another man.

Although the Judge declined to charge the jury on some of the propositions suggested by the Counsel for the Defendant exactly in the manner of the request, in relation to the question of corroboration of the prosecuting witness, on the previous chastity of her character, yet in what he actually charged, he covered all that was properly requested of him by the Defendant's Counsel substantially and fully, and gave them the law correctly upon these points. He did charge "That unless there be evidence other than that of the female sufficient to indicate the commission of the offence, the Defendant must be acquitted." He also charged, " That if the jury find that the Defendant had carnal intercourse with the witness at the time and place in the indictment charged, under a promise to marry, the jury may convict, although she may have had carnal connection with the Defendant previously, provided she had reformed and was chaste at the time of the commission of the offence." And also, " That in order to convict the Defendant it was necessary for the prosecution to have corroboration in all the material points in the case." And on the subject of chastity, he again said : " If you find, gentlemen, from the evidence and the facts in the case of which you are the exclusive judges, that she was not unchaste in principle, but in her former intercourse with him, yielded because of her affection for him, and because of her trust in his faith, that he would marry her, and on her discovery that he disappointed her, from principle had reformed at and before the time charged,

then in the eye of the law she was a chaste person at the time of the commission of the act, and if done under a promise of marriage and the facts are established by competent and satisfactory evidence, you must find a verdict of guilty, provided also you find the other facts true."

This embraces the law on the contested points, quite favorably for the prisoner. It instructs the jury that the prosecuting witness must be corroborated on every material point; that such corroboration must be sufficient in itself to indicate the commission of the offence independent of the evidence of the prosecuting witness. That this witness must have been of previous chaste character, and that all these facts are exclusively for the jury to find upon the evidence.

The Judge was right in refusing to withhold these questions from the jury, as there was some evidence in corroboration on each of them. He was right also in refusing to hold, that because the prosecuting witness had previously had connexion with the Defendant, that she could not be of chaste character.

When a man enlists the affections of a woman, and by promising to make her his wife, creates between them the most confidential and sacred of relations, and by this means succeeds in obtaining from her concessions, sinful and impure, it is true, but from their very guilt, proof of the depth of the love and confidence which extorted them, and aggravates his treachery by continuing before his victim the delusive hope that he will yet redeem his pledge, and thus compels her to yield anew, until at last his infidelity is rendered certain by his marriage with another, and she in the despair of exposure and shame, calls him to an account before a court of justice, the law will be slow to permit him to object, that by reason of her acts, continued perhaps to shield him from disgrace, she was a woman of unchaste character.

The law has provided for the case of a simple illicit connexion between a man and a woman, and makes it fornication. But to perfect this crime there must be superadded the promise of marriage, and the chaste character of the woman, or in other words her seduction under promise of marriage. The law does not mean that a man, even if he promises to marry a woman, and by reason of his promise obtains from her illicit

favors, shall be punished under this act, unless he also seduced the woman from her chastity. If she had previously had illicit intercourse with other men, and had made a reformation on principle, the law will even then protect her, and punish her seducer; but it would be a far different case where a woman had been before seduced by one man, and claimed a reformation to have taken place before her second fall with another, from one, where the woman had never yielded her virtue save under the mitigating circumstances of a promise to marry; but in either case the facts must be submitted to the jury when there is corroborating evidence, and their verdict, as in any other case, will not be disturbed unless greatly against evidence.

A new trial is denied and the case remanded.

*Chief Justice Emmett dissents.*