R. J. MARVIN, Administrator, and others *vs.* ELIZA A. DUTCHER.

March 5, 1880.

| 26 | 391 |
|----|-----|
| 39 | 260 |
| 26 | 391 |
| 41 | 237 |
| 26 | 391 |
| 45 | 65 |
| 26 | 391 |
| 48 | 90 |

**Accounting by Adm'x—Competency of Witness to the Fact of his own Partnership with Decedent.**—In a proceeding in probate court between certain creditors of the estate and an administrator *de bonis non*, of the one part,. and an administratrix who has been removed, of the other, for a final settlement of her administration account, it became collaterally a material question, as affecting her liability to account for certain property, whether a certain partnership existed in respect thereto between one George and the decedent. *Held*, that George was a competent witness to prove that fact on behalf of the administratrix, and to give testimony touching conversations and transactions between him and the said decedent tending to show that fact—it appearing that he was neither a party nor in privity with either of the parties to the proceeding, and that he had no interest in the estate, as next of kin, heir, creditor or otherwise.

**Same—Judgment on such Accounting not Evidence against such Witness.**—A judgment upon the accounting in such proceeding cannot be used as an instrument of evidence either for or against George, in any other action or proceeding to which he may be a party, upon the question of such partnership, for the purpose of affecting any alleged right of his as such partner.

**What Interest disqualifies a Witness from testifying to Conversations with a Deceased Person.**—The disqualifying interest intended by Gen. St. 1878, *c.* 73, § 8, to affect the competency of a witness to testify touching matters therein stated, is such an interest, only, in the event of the action or proceeding, that the witness having it will either gain or lose by the direct legal operation of the judgment therein, or may be prejudiced in some right by the use of the judgment as evidence for or against him in some other action or proceeding.

**Judgment on Question incidentally in Issue in Former Action not an Estoppel.**—In a prior probate proceeding instituted by the appellant creditors herein against the respondent, under Gen. St. *c.* 51, § 12, for her removal as administratrix, on the ground that she had become an unsuitable person to discharge the trust, a question as to the existence of a copartnership between the decedent and one G., in respect to certain property, was incidentally involved, contested and passed. upon by the court. In this proceeding, having for its object an adjudication and settlement of her administration account, the same question of partnership is again involved collaterally, for trial and determination. *Held*, that the judgment in the former proceeding, removing the respondent as administratrix, does not conclude her from contesting anew, in this proceeding, said question of partnership.

**392**        MINNESOTA. REPORTS.

**Silence, when not an Admission.**—Where there are no circumstances making it the duty of a person to speak as to the existence of an alleged fact, his silence cannot be taken as an admission against him.

**Evidence to prove Negative, held Incompetent.**—G., a witness for respondent, having testified that he openly avowed his claims as surviving partner to the business of the hotel in which one V. was, at the time, a boarder, soon after the death of his alleged copartner, V. was called as a witness by appellants and asked the question, "When he first heard of any claim on the part of G. that he was interested in that house." This was excluded on the ground of incompetency and immateriality. *Held*, not error.

**Evidence—Declaration in Casual Conversation.**—A declaration by one party to another, made in a merely casual conversation between them, concerning no matter of business then being done by either, but of a friendly and social character only, forms no part of the *res gestæ* of any transaction, and is not admissible in evidence on that ground, to prove the fact to which it relates.

**Same—Declaration in one's own Favor.**—A declaration in one's favor is not competent evidence to rebut counter statements made at other and different times, concerning the same matter, against his own interest.

**Specific Questions of Fact tried by Jury—Effect of Verdict.**—The rule for determining the sufficiency of evidence to support the findings of a jury upon controverted questions of fact, applied to verdicts in civil actions of a purely legal nature, applies also to all verdicts upon specific questions of fact tried by a jury under the direction of the court, pursuant to Gen. St. c. 66, § 199, whether in actions of equitable cognizance only, or in cases transferred to and tried in a district court, on appeal from a probate court.

Gilbert Dutcher, lessee and sole ostensible proprietor of the Metropolitan Hotel, in St. Paul, died on October 1, 1873. Soon after his death, one of his sons-in law, Edwin R. George, asserted a claim that he and the deceased had been equal copartners in the business of keeping the hotel, and equal owners of the lease, furniture and other property employed in the business. No written agreement of partnership had existed between them, nor had the name of George appeared or been used in the business, which had been carried on in the name of Gilbert Dutcher alone. On October 25, 1873, Eliza A. Dutcher, the widow of the deceased, his son Austin Dutcher, his two daughters and their husbands (George being husband of one of them) entered into an agreement under seal, in which,

after reciting the claim of George, and that some uncertainty existed as to the extent of his interest in the business and property, the parties thereto covenanted and agreed that George was an equal partner, as he claimed to be, and proceeded to provide for the carrying on of the business, and for paying, out of the proceeds of the business, if sufficient, the debts of the late firm, estimated to amount to $21,000. This agreement, which will be found at length in *Delaney* v. *Dutcher*, 23 Minn. 373, was held in that case to create a partnership between the parties to it. After this agreement was made, and on November 15, 1873, Eliza A. Dutcher was appointed administratrix of the estate of her deceased husband. The new partnership continued to carry on the hotel business in the name of E. R. George (who was the active partner and sole manager) down to May 29, 1875. On that day Mrs. Dutcher, as administratrix, served on George a notice in which she stated that, the indebtedness of the late firm having been fully liquidated and paid, she demanded of him, on behalf of the estate of Gilbert Dutcher and the creditors thereof, an immediate account and settlement of the interest of the estate in such firm, as it existed at the date of the death of Gilbert Dutcher, that the same might be sold and distributed amongst the creditors of the deceased. On receipt of this notice, George at once made two general assignments to the same assignee—one of his individual property, for the payment of his individual debts, and one in the name of himself and his copartners, of all the property of the firm of E. R. George, for the benefit of the creditors of that firm—and delivered possession of the hotel, furniture, etc., to the assignee.

On March 18, 1876, Cyrus H. McCormick and others, creditors of the late Gilbert Dutcher, filed their petition in the probate court of Ramsey county, stating the foregoing transactions, and that George never was a partner with Gilbert Dutcher, but that all the hotel property belonged to Dutcher individually, and was worth over $30,000; that the debts proved and allowed against his estate amounted to $21,174.77,

of which amount the sum of $13,505.58 was held by the peti-
tioners.   They charged that the agreement of October 25,
1873, was made wrongfully and in violation of the rights of
the creditors of the estate, and that, to carry out such unlaw-
ful agreement, the administratrix, in her inventory of the
estate, stated the interest of the deceased in the hotel lease,
fixtures, furniture, etc., at no greater than one-half part
instead of the whole thereof.   They further charged that the
administratrix had injured and wasted the estate, and, as a
consequence of the partnership, had involved it in expensive
litigation, and that, by reason of the matters set forth, she
was an unfit person for administratrix, and they prayed that
she be removed from her trust, and that some suitable person
be appointed in her stead.    Mrs. Dutcher, the administratrix,
filed her answer to this petition, denying Mr. Dutcher's sole
ownership of the hotel property, and alleging that George was
an equal partner with him.    She also denied or avoided the
other matters charged.    A hearing was had in the probate
court, and on June 14, 1876, an order made in accordance
with the prayer of the petition, removing Mrs. Dutcher, and
appointing R. J. Marvin, administrator *de bonis non*.   From
this order Mrs. Dutcher appealed, on questions of law and
fact, to the district court for Ramsey county, and the appeal
was there tried before *Simons*, J., who found, among other
things, that Gilbert Dutcher, at the time of his death, was
sole owner of the hotel lease, fixtures, furniture and supplies,
and not as copartner with George; that no such copartner-
ship existed, and that it did not appear that before or at the
time of the death of Mr. Dutcher, George had any interest
whatever in such property or in the hotel business.    As a
conclusion of law, the court found that Mrs. Dutcher was an
unsuitable person to discharge the trust of administratrix
and ordered judgment that she be removed, and her letters
annulled.    Judgment was entered against her, pursuant to
this order, on November 11, 1876.

Pending the appeal to the district court, and in September,

1876, Marvin, the administrator *de bonis non,* and the same creditors who had petitioned for Mrs. Dutcher's removal, filed separate petitions in the probate court, praying that Mrs. Dutcher be required to render her final account as administratrix. In obedience to a citation issued on these petitions, Mrs. Dutcher filed an account, to the allowance of which the administrator and the creditors objected on the ground (among others) that at the time of his death Mr. Dutcher was the sole owner of the hotel lease, fixtures, furniture and supplies, which were of the aggregate value of more than $60,000, and that Mrs. Dutcher, after she became administratrix, well knowing that Mr. Dutcher at the time of his death was such sole owner of such property, wrongfully converted the same to her own use, and negligently suffered George to convert them to his own use, whereby they became wholly lost to the estate. The administrator and the creditors, therefore, insisted that in the statement of Mrs. Dutcher's accounts, she be charged with the full value of such property, being the sum of $60,000. On the examination of the accounts, and the testimony taken, the probate court held that George was not a copartner with Dutcher, and charged Mrs. Dutcher with the value of the hotel property, and stated her account as follows:

Eliza A. Dutcher, Administratrix, to Estate of Gilbert Dutcher, Deceased, Dr.:

| | |
|---|---|
| To receipts, as per account, - - | $16,431.74 |
| Contra. | Cr. |
| By disbursements, as allowed by the court, | 8,166.46 |
| Balance in favor of estate, - - | $8,265.28 |
| Add value of assets of Metropolitan Hotel, - | 63,037.24 |
| Balance due estate, - - - | $71,302.52 |

From this judgment of the probate court, Mrs. Dutcher appealed to the district court for Ramsey county, on questions both of law and fact. On her application, that court

ordered that certain specific questions, six in number, be submitted to and tried by a jury. Of these, the fourth only is material to be stated here, and is as follows: "Whether or not the said Gilbert Dutcher and the said Edwin R. George were, at the time of the death of the said Gilbert Dutcher, partners in the business of carrying on the business of said Metropolitan Hotel, and in said hotel assets?"

At the trial of these questions, before *Brill*, J., and a jury, the principal witness introduced by Mrs. Dutcher to prove such partnership was George himself. His testimony as to conversations and transactions with Mr. Dutcher, and admissions by him, was duly objected and excepted to. The counsel for the administrator and creditors offered, as proof that Dutcher and George were not partners, the record of the above-mentioned proceedings in the probate and district courts, instituted by these same creditors, for the removal of Mrs. Dutcher. The evidence was excluded, and they duly excepted. They also offered to prove by his Honor Judge Simons, of the same court, before whom Mrs. Dutcher's appeal from the order of removal was tried, that the principal subject-matter litigated before him in that appeal was whether or not Dutcher and George had been partners in the business of the Metropolitan Hotel, and offered, in connection with his testimony, the records before excluded. The offer was overruled, and they duly excepted.

The counsel for the administrator and creditors called as a witness one Viele, a boarder at the hotel at and for a long time prior to Mr. Dutcher's death, and asked him when he first heard of any claim on the part of Mr. George that he was interested in that house. The question was excluded on the objection that it was incompetent and immaterial, and they duly excepted.

Prior to his hiring the Metropolitan Hotel, Mr. Dutcher had kept the Revere House in Chicago. George having testified that he was a partner with Mr. Dutcher in carrying on that hotel, the counsel for the administrator and creditors offered

the deposition of Leander J. McCormick, one of the owners of that hotel, while it was kept by Dutcher. A statement in his deposition—"I looked on George as a working man there, and never heard of him in any other connection. From what I recollect of him, I would not have trusted him with a ten-dollar bill, and his name would have been of no use in the lease" —was excluded as incompetent and immaterial, and exception duly taken. The following passage from the deposition of one Ostrom, who bought a half interest in the Revere House from Dutcher, was also excluded on the same grounds, and exception was duly taken: "I had a conversation with Mr. Dutcher on the point as to whether or not George was interested in the house. Dutcher said George had no interest; that he, Dutcher, was owing George some borrowed money, and he asked me as a favor that George remain there as a boarder, himself and family, which I allowed. The price agreed on was $40 per week, which was charged to Gilbert Dutcher's account." Similar testimony in the deposition of one Dow was also excluded on the same ground, and exception was duly taken.

The jury answered the foregoing fourth question in the affirmative, thus finding that Dutcher and George were partners. In their answers to other questions, they found that George came into full exclusive possession of the property in question on October 1, 1873, (the day of Mr. Dutcher's death,) and so continued till he made his assignment, on May 29, 1875; that he was so in possession under the claim that he was surviving partner; that no part of such property ever came into Mrs. Dutcher's possession or was converted by her, and that the value of the property at the time of Mr. Dutcher's death was $32,000. The administrator and creditors moved for a new trial on the ground that the verdict was against evidence, and for error in rulings at the trial. The motion was heard before the three judges of the court, and was denied, and thereupon this appeal was taken.

: *Gilman & Clough*, for appellants.

A verdict in this case finding the existence of the partnership would be evidence in favor of George when sued by the administrator for converting the hotel property; and on a verdict that no such partnership existed, Mrs. Dutcher would be charged with the value of the effects put into George's hands, and he in turn would be liable to her for their value, having obtained them on the false representation that he had been a partner with Mr. Dutcher. Hence George was not a competent witness to conversations or transactions with Mr. Dutcher or to admissions made by him. *Davies* v. *Morgan,* 1 Beav. 405; *Shiras* v. *Morris,* 8 Cow. 60; *Rogers* v. *Dibble,* 3 Paige, 238; *Woods* v. *Skinner,* 6 Paige, 76; *Harwood* v. *Murphy,* 4 Halst. 215; *Bland* v. *Ansley,* 5 Bos. & Pul. 331; *Keightley* v. *Birch,* 3 Campb. 521; *Gardiner* v. *Levaud,* 2 Yeates, 185; *Pendleton* v. *Speed,* 2 J. J. Marsh. 508; *Griffin* v. *Brown,* 2 Pick. 304; *Miller* v. *Falconer,* 1 Campb. 251; *Moorish* v. *Foote,* 8 Taunt. 454; *Kerrison* v. *Coatsworth,* 1 Carr. & P. 645; *Wake* v. *Lock,* 5 Carr. & P. 454.; *Heermance* v. *Vernoy,* 6 John. 5; *Benton* v. *Pratt,* 2 Wend. 385; *Culver* v. *Avery,* 7 Wend. 379; *White* v. *Merritt,* 7 N. Y. 352; 1 Greenl. Ev. §§ 386–398.

The parties to the proceeding for the removal of Mrs. Dutcher and to those for the accounting were, in a legal sense, the same. The addition of a new administrator as a party to the accounting does not alter the state of the parties to the proceedings. He has no interests of his own, and is merely the guardian of the interests which were before the court in the proceedings for removal.

The question whether George was a partner with Dutcher in keeping the hotel was a material question in the former proceeding; it was distinctly made an issue on the record, and was twice litigated at great length and with the utmost pertinacity. The only substantial charge that Mrs. Dutcher was unfit to be administratrix is found in the charge that while her husband died sole proprietor of the hotel, she, as administratrix of the estate, had improperly conceded George's

claim of a partnership. Hence the question of this partnership was not only a material, but it was the vital, the controlling question in the case, and was so treated by both the courts in which it was litigated, and by all the parties to the litigation. Mrs. Dutcher's answer to the petition is mainly directed to that point, and the trials in each court, each trial occupying several days, were almost exclusively devoted to that single issue. The adjudication, in the former proceeding, of the question whether George was a partner is therefore conclusive in this proceeding.

1 Greenl. Ev. §§ 522–531; 534; 536; *Hopkins* v. *Lee*, 6 Wheat. 109; *Staple* v. *Spring*, 10 Mass. 72; *Outram* v. *Morewood*, 3 East, 346; *Eastman* v. *Laws*, 5 Bing. N. C. 444; *Gardner* v. *Buckbee*, 3 Cow. 120; *Sturtevant* v. *Randall*, 53 Me. 149; *Potter* v. *Baker*, 19 N. H. 166; *Hall* v. *Dodge*, 38 N. H. 346; *Hurlburt* v. *Wheeler*, 40 N. H. 73; *Packet Co.* v. *Sickles*, 24 How. 333; *Miles* v. *Caldwell*, 2 Wall. 35; *Doty* v. *Brown*, 4 N. Y. 71; *Parcher* v. *Bussell*, 11 Cush. 107; *Krekeler* v. *Ritter*, 62 N. Y. 372; Bigelow on Estoppel, (1st Ed.) 35–47, 60–62, 65–67, 74–84.

*Henry J. Horn* and *Harvey Officer*, for respondent.

Cornell, J. The proceedings before us on this appeal originated in the probate court of Ramsey county, and the matters involved were tried and determined in the district court, upon an appeal taken from the decree of a probate court. Respondent, having been removed from her position as administratrix of the estate of her deceased husband, Gilbert Dutcher, presented her final administration account, for settlement and allowance by the probate court. Appellants filed objection thereto, in which it is claimed, in substance, that certain property therein mentioned as a leasehold interest in the Metropolitan Hotel, in the city of St. Paul, together with the fixtures, furniture and supplies thereto belonging, constituted a part of the assets of said estate, and that, by her misconduct and negligence as administratrix, the same had been wrongfully converted by her and one George, and thereby

wholly lost to the estate, by reason of which, as is alleged,, she became legally chargeable with the full value thereof in. her said account.

This claim is resisted by the respondent mainly upon the grounds that she has never had any knowledge of the existence of any interest in the decedent in said property, other than as an equal copartner with the said George, who took and held exclusive possession of the same as surviving partner, upon the death of the intestate; that none of said property ever came to her possession or under her control as administratrix, and that she has never been able to procure any accounting from the said George, nor any division of such alleged partnership property, although she has made all reasonable efforts to accomplish that end. The precise point in controversy between the parties, it will be seen, relates to the extent of the respondent's personal liability, if any, as administratrix, upon her accounting, in respect to this property, which was claimed and held by George as a surviving partner, and which the appellants allege belonged solely to the decedent as his individual property at the time of his death.

To rightly determine this question of liability, the district court, with the consent of parties, directed certain specific questions of fact, which are made a part of this record, to be submitted to and tried by a jury, and their verdict establishes as facts that none of said property ever came into respondent's possession; that she has never converted any portion of it; that the said decedent and the said George were equal copartners in respect thereto, and that the latter, upon the death of the former, came into the full and exclusive possession thereof, and has since continued to hold the same under a claim as surviving partner. Upon the trial of these questions of fact before the jury, George was permitted on behalf of the respondent to testify to certain admissions of the decedent, and to certain conversations and transactions between them, in the nature of admissions, tending to show the existence of the alleged partnership; and the first question presented for

our consideration relates to his competency as a witness in that regard, under the statute which provides that "it shall not be competent for any party to an action, or interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a deceased or insane party or person, relative to any matter at issue between the parties." Laws 1877, *c.* 40, § 1. (Gen. St. 1878, *c.* 73, § 8.)

It is not claimed that George was a party to the proceeding, but it is contended that he was interested in the event of the litigation, within the meaning of the statute. To exclude him as a witness on this ground, it must appear that he has something to gain or lose by the direct legal operation and effect of the judgment to be rendered therein, or that the record thereof can be used for or against him, as evidence upon the fact of partnership, in some other action or proceeding in which it may be brought in question. 1 Greenl. Ev. §§ 386–391.

The only effect any judgment upon the accounting can have, is to fix the amount of respondent's liability, and to that extent increase or diminish the assets of the estate; and as George has no interest therein, as heir, next of kin, creditor or otherwise, it is evident that he can in no way be directly affected thereby. He can neither gain nor lose by its direct legal operation.

The question, then, is reduced to this: Whether, in another action or proceeding wherein George may be a party, and his rights as such surviving partner may be involved, the judgment to be entered herein can be used as legal evidence, either for or against him, to prove or disprove the alleged partnership between him and Dutcher. It is contended by appellants, *first*, that in an action by the administrator *de bonis non* against George, for the conversion of the hotel property over which he assumed control as surviving partner, he could successfully defend himself, in case of a verdict herein establishing the fact of partnership, by the use of the same as evidence in such action upon that point; and, *second*, that a

decision herein, upon the accounting, that no such copartnership existed, will result in charging the respondent with the value of said property thus taken by George, and he will thereupon become liable therefor in turn to her; and the judgment in this proceeding may be used as evidence to establish such liability, as it would disprove the alleged fact of partnership.

This last position is clearly untenable for these reasons: The validity of George's claim to the property is not directly in issue herein for adjudication as between him and the estate, or those representing it. It is not competent for the probate court to acquire any jurisdiction over the subject-matter of such a claim, nor of the person of George, for the purpose of determining his legal rights in respect thereto. The matter for adjudication herein is the settlement of respondent's administration account. The question of fact as to the existence of the alleged partnership is only incidentally involved, as matter of evidence touching the liability of the administratrix to account for certain property claimed to have belonged to the estate, and to have been converted by her. Its decision, therefore, cannot be used as evidence to prove or disprove the fact of partnership in any other action or proceeding wherein that question may be directly at issue, and certainly it cannot legally bind or affect George in any way, because he is not a party to the proceeding, nor in privity with any of the parties. He is unaffected by any notice, actual or constructive, of the litigation. He has no opportunity to be heard, to produce testimony, or rebut that produced by others, upon any of the matters in controversy, and no right to appeal from the decision. He is an utter stranger to the proceeding, with no right of control over it whatever, and powerless to protect any rights he may have in the matter. The record, therefore, ought not and cannot be legally used as an instrument of evidence against him for any purpose.

The first proposition is equally untenable. If, as already shown, George is not, by reason of any judgment that may

be rendered herein, precluded from litigating the question of partnership in any action or proceeding wherein his rights, as such surviving partner, may become involved, it is difficult to see upon what principle the administrator *de bonis non* can be concluded from litigating the same matter as against him. If the judgment can work no estoppel upon George, it certainly cannot upon the estate, for estoppels must be mutual. If, notwithstanding a verdict herein negativing the alleged fact of partnership, George can still enforce his claims, if any, to the property, as surviving partner, against the estate, the rights of the latter, if any, to such property, cannot be prejudiced by any decision herein, whatever it is. It can only legally affect the question of respondent's liability to the estate, upon her accounting, in respect to the property in question and otherwise, and preclude any further inquiry into that matter. The question of title to the property, as between the estate and George, or any other party, can in no way be affected by it.

The second point made by appellants is, that the issue of partnership in this case has already been litigated by the respondent herein, and decided against her, in the prior proceeding in the probate court for her removal as administratrix, and she is thereby concluded from contesting the matter anew in this proceeding. It is incontestable that the judgment of a court of competent jurisdiction is conclusive as evidence upon parties and privies in respect to every question directly involved in the issue, and determined by the judgment. Within the meaning of this rule, the issue must be one within the jurisdiction of the court authoritatively to try and determine, in a direct proceeding for that purpose; and, in such a case, every essential fact necessary to uphold the judgment will be deemed to have been directly embraced within the issue. Facts, however, not thus essential and necessary, but which are only indirectly involved, as matter of evidence bearing upon the precise point in controversy for adjudication, do not fall within the rule, and as to them the

doctrine of *res adjudicata* has no application. Matter of this kind, thus incidentally arising and considered, though actually contested and passed upon, still remains open to future litigation, whenever any rights dependent thereon come directly in issue for adjudication. The proceeding wherein the judgment was rendered, the record of which was sought to be used as conclusive evidence against respondent, upon the trial of the question of partnership in this case, was instituted under the statute which authorizes a probate court to remove an administrator, whenever found to have become "unsuitable or incapable of discharging the trust." Gen. St. *c.* 51, § 12.

The precise point which was there presented for adjudication, and the only one which that court had any jurisdiction to try and determine, was that of the personal fitness or unfitness of the respondent to continue longer to act as the administratrix of the estate of her deceased husband. By the judgment therein this matter became *res adjudicata*, and could not again be questioned by the respondent, except in the way of review on appeal. She was not, however, concluded by it from litigating anew any collateral question or disputed fact considered or passed upon in that proceeding incidentally, only, because of its bearing as evidence upon the vital point in controversy; and such was clearly the character of the question which was there raised and contested as to the existence of the partnership between George and the decedent.

A finding upon that fact or question was only pertinent to characterize the conduct of the respondent in recognizing the validity of George's claim to the hotel property as a surviving partner of the intestate, for the purpose of aiding in the determination of the main question whether, under the circumstances, she was a suitable person to perform the duties and discharge the trust of an administratrix faithfully and advantageously to the estate. In this incidental way, and to this end, the probate court rightly took cognizance of the question and passed upon it; and in this indirect way alone was it proper for the court to consider it, for probate courts

have no jurisdiction to try and determine partnership rights in any action or proceeding brought for that direct purpose.

The authorities in support of these views are numerous, of which see *The Duchess of Kingston's Case*, 20 Howell's State Trials, 538, and note to same, 2 Smith Lead. Cas. 657 *et seq.*; *Hibshman* v. *Dulleban*, 4 Watts, 183; *Lewis & Nelson's Appeal*, 67 Pa. St. 153; *Campbell* v. *Consalus*, 25 N. Y. 613; *King* v. *Chase*, 15 N. H. 9; *Burlen* v. *Shannon*, 99 Mass. 200; *Howard* v. *Kimball*, 65 Me. 308. The exception to the ruling of the court below upon this point is not well taken.

The question put to Col. Viele "when he first heard of any claim on the part of George that he was interested in the hotel," was properly excluded. It is contended by appellants that the response to this inquiry would have shown that witness first heard of the claim nearly a week after Dutcher's death, and that such evidence was competent, as tending to discredit the testimony of George to the effect that he made known his claim as surviving partner immediately after Dutcher's death, and also to negative the existence of the partnership, for the reason that his silence, under the circumstances, would raise a presumption against the truth of the alleged fact. The evidence sought was incompetent for either purpose. The position of the witness was simply that of a boarder, living in the house. It is not shown that he sustained any peculiar relations to the business of the hotel, to Dutcher or George, that made it the duty of the latter, upon the death of Dutcher, immediately to disclose to witness his interest, if any, in the hotel business, so that his silence upon the subject might be construed into an admission against him that the alleged partnership never had an existence in fact. It is not pretended that George had stated in his testimony that he ever had any conversation with the witness Viele upon the subject of his claim. It is only contended that he testified to having made it known very soon after Dutcher's death; and the fact that the witness did not hear of it for some time

thereafter would not even tend to disprove the truth of the statement.

The deposition of the witness Van Slyck was properly excluded. The conversation to which it referred was simply a casual one between him and Dutcher, of a social and friendly character. It concerned no matter of business then being done by either, and hence it formed no part of the *res gestæ* of any transaction. The statement made by Dutcher to the witness, at that time, that George was not a partner of his in the hotel, was a declaration in his own favor, and cannot, upon any principle, be received as evidence to negative the fact of partnership between him and George, as against the latter and those claiming under him. Neither was it competent in rebuttal of counter statements of Dutcher, made on other and different occasions. An admission by a party against his interest, at one time, cannot be rebutted by proof of a statement made in his own favor at another time.

That portion of the deposition of witness McCormick which was excluded, was properly ruled out as an expression of an opinion of the witness merely. The testimony of Ostram and Dow, as to the admissions of Dutcher in conversations with them concerning the interest of George in the Revere House, was properly ruled out as hearsay evidence.

The general charge of the court to the jury very fully covered, and correctly and plainly stated, every proposition of law fairly applicable to the case or to the evidence in any of its aspects, and none of the refusals excepted to, in our judgment, furnish any just ground for complaint. The reasons given for the refusals, in the opinion of the court below, challenge our unqualified assent and approval.

Appellants' last point presents the question whether, in a case of this kind, a motion for a new trial of an issue of fact found by the jury, when made upon the sole ground that the verdict is not justified by the evidence, is to be decided by any other or different rule than that which prevails in the determi-

nation of like motions in respect to verdicts in civil actions of purely legal nature, such as were formerly known as actions at law.

The authority for a jury trial of controverted questions of fact, arising in appeal cases of this character from a probate to a district court, is derived by implication from Laws 1874, c. 71, §' 2; Gen. St. 1878, c. 49, § 19. The legal effect of this section is to extend to this class of appeal cases the provisions of Gen. St. c. 66, § 199, and to place such cases upon the same footing, in all respects, with those provided for in that section, so far as relates to the trial by jury of any issues of fact involved, and the purpose and effect of any verdict rendered thereon. The question before us, therefore, is reduced to one as to the legal effect of a verdict upon an issue of fact, directed to be tried under the provisions of that section of the General Statutes.

The next preceding section (198) provides that "an issue of fact in an action for the recovery of money only, or of specific real or personal property, or for a divorce from the marriage contract on the ground of adultery, shall be tried by a jury, unless a jury trial is waived, * * or a reference ordered, as provided by statute." Section 199 enacts that "every other issue of fact shall be tried by the court, subject, however, to the right of the parties to consent, or of the court to order, that the whole issue, or any specific question of fact involved therein, be tried by a jury or referred." The trial referred to in both of these sections is that mentioned in section 196, which defines it to be "a judicial examination of the issues" to be tried, and this is the sense in which it must be understood, in whatever connexion used, in any of the provisions of this chapter of the General Statutes of which these sections form a part. As respects the result of the trial, and the purpose and effect of a finding upon the particular issue of fact in controversy, no distinction is made in these or any other sections of the chapter, whether the issue arises in one

class of civil actions or another, or whether it is tried by a court without a jury, or by a jury, or by a referee.

The provisions for new trials, enacted with reference to all classes of civil actions, including what were formerly known as actions at law and suits in equity, (Gen. St. *c.* 66, tit. 20,) place all findings upon issues of fact upon the same footing, without regard to the nature of the action, and without discrimination in any respect. It is declared that any "verdict, report or decision may be vacated, and a new trial granted" for any of the causes therein enumerated, one of which is "that the verdict, report or decision is not justified by the evidence." No exception is made in respect to any class of verdicts, or verdicts or findings in any particular class of cases; nor is there any intimation that the degree of evidence which would be sufficient to sustain a finding in one case would not be equally effectual in every other. An omission of this kind, in a code avowedly designed to cover all rules and questions of practice and procedure in a civil action, whether of a strictly legal or purely equitable nature, raises a strong presumption that a uniform rule was intended for the determination of every case involving a question as to the sufficiency of the evidence to support a finding of fact. And this has been repeatedly and uniformly recognized as correct doctrine under the present practice, by this court, in reviewing findings of fact by juries, courts and referees, in all classes of civil actions, ever since the abrogation, in 1853, of a separate and distinct chancery jurisdiction and practice. *Morrison* v. *March*, 4 Minn. 325 (422;) *Dixon* v. *Merritt*, 6 Minn. 98 (160;) *Davis* v. *Smith*, 7 Minn. 328 (414;) *Heinlin* v. *Fish*, 8 Minn. 48 (70;) *Sons of Temperance* v. *Brown*, 11 Minn. 254 (356;) *Humphrey* v. *Havens*, 12 Minn. 298; *Johnson* v. *Wallower*, 18 Minn. 288; *Hinkle* v. *Lake Superior & Mississippi R. Co.*, 18 Minn. 297; *Schwartz* v. *Germania Life Ins. Co.*, 21 Minn. 215.

In *Morrison* v. *March*, 4 Minn. 325 (422,) the question as to what effect, under the present practice, courts of review

must give to the decision of trial courts in equitable actions, in respect to all controverted matters of fact, was fully con- sidered and discussed; and the doctrine was then announced that they are not open to review on the ground that they are against the mere weight of evidence, as was formerly the case with like decisions made by a vice-chancellor, but that they are to be placed upon the same footing with verdicts of juries upon like matters in common-law actions, and must have the same binding and conclusive effect.

In *Dixon* v. *Merritt,* 6 Minn. 98 (160,) which was an equity case, tried by the court, the objection was made that the find- ing was contrary to the evidence. In considering this ob- jection the court says: "The evidence was peculiarly of that nature which rendered a court or jury the appropriate tribu- nal to pass upon the same; and this court cannot disturb the finding on the ground that it is against the weight of evidence, nor unless it is plainly contrary to the evidence." In *Davis* v. *Smith,* 7 Minn. 328 (414,) which was an equity case, tried by a jury with the consent of parties, the rule is reiterated in this language: "Where there is some evidence to sustain their finding, this court will not disturb the verdict on the ground that the weight of evidence, as reported in the case, might seem to favor the other theory."

In *Humphrey* v. *Havens,* 12 Minn. 298, also an equity case, but tried by a referee, it is stated to have been "repeatedly held in this court that, as a general rule, the finding of a jury, a court or a referee, upon a question of fact, will not be dis- turbed where there is any evidence reasonably tending to sus- tain it." If, after this repeated recognition of the existence of a uniform rule applicable alike to findings of fact in all classes of civil actions, the question could still be regarded as an open one, whether the verdict of a jury, upon specific ques- tions of fact involved in an equity case, submitted to and tried by them under the provisions of Gen. St. *c.* 66, § 199, is any less conclusive than a verdict in an ordinary civil action at law, certainly, a holding to that effect now could only be jus-

tified upon the most cogent reasons, none of which it seems. to us exists.

There is nothing in the nature of an equity case that renders the determination of a disputed question of fact therein any more difficult to a jury than the determination of the same or a like question in an action at law.  In either case, its correct solution depends upon proper deductions to be drawn from other facts and circumstances, and also largely upon the weight to be given to oral testimony, in both of which matters a jury is supposed to possess peculiar qualifications, fitting them to form a correct judgment.   See citation from Starkie in *Humphrey* v. *Havens*, 12 Minn. 298, 307. Under our practice, whenever an issue of fact is directed to be tried by a jury in an equitable action, or in any other proceeding, it is tried in the presence of the court, and under its direction, and in the same manner, in every respect, as every other issue of fact in any action is tried; and there is no good reason why the verdict should not receive the same effect as other verdicts; and such in our judgment is the correct rule.   The decisions cited by appellants from Wisconsin, (*Jackman Will Case*, 26 Wis. 104, and *Chafin Will Case*, 32 Wis. 557,) are not in point, for the reason that they both rest. upon the doctrine which prevails in that state, under the decision of *Callanan* v. *Judd*, 23 Wis. 343, that the finding of a jury upon an issue of fact, in an equitable action, only has the same advisory effect formerly given to a verdict upon a feigned issue out of chancery.   In this state the statutory provision which recognized and authorized the awarding the feigned issues in equity cases (Rev. St. 1851, c. 94, § 27,) was expressly repealed in 1853, (Laws 1853, c. 1,) and it was then provided that all suits of an equity nature should thereafter be "commenced, prosecuted and conducted by like process, pleadings, trial and proceedings as in civil actions."

For reasons already stated, we are of the opinion that the clause in section 199 which authorizes a jury trial of any specific question of fact, upon the order of the court or upon

the consent of the parties, was not intended merely as a substitute for the old feigned issue, nor to serve its purpose in simply informing the conscience of the court upon some doubtful question of fact. Its object was rather to extend the proverbial benefits of a jury trial to the final determination of every controverted question of fact, in actions other than those mentioned in the preceding section, whenever the parties thereto may desire, or the court, in its judgment, may deem it best, to have such a trial.

Order affirmed.