ADELE SEGELBAUM *vs.* MAX SEGELBAUM.

MAX SEGELBAUM *vs.* ADELE SEGELBAUM.

### October 5, 1888.

**Divorce—Cruelty—Pleading and Proof.**—In an action for divorce, on the ground of cruelty, evidence of the conduct of the parties, and acts not specially pleaded, and antedating the charges specifically made in the complaint, may be received as confirmatory and cumulative evidence in support of the facts pleaded.

**Same—Defences—Provocation.**—Provocation which is disproportionate to the wrongs and injuries suffered, is insufficient to sustain a plea of justification.

**Same—Desertion.**—Where the parties are shown to have continued to live together as husband and wife, and other marital duties are observed, a refusal to occupy the same bed does not, by itself, constitute desertion.

**Same—Alimony.**—Evidence *held* sufficient to sustain the order for allowance of alimony as made by the trial court.

Appeals by Max Segelbaum, from the judgment in the first action, granting a divorce, and from the judgment in the second action refusing a divorce, the actions having been tried together before *Rea*, J.

*Robinson & Baker* and *Geo. P. Wilson*, for appellant.

*W. E. Hale* and *A. P. Loomis*, for respondent.

VANDERBURGH, J. These two cases were tried together, and upon the whole evidence submitted for the determination thereof, and it was stipulated that the evidence so introduced should be used in either case in so far as it was material. The court thereupon adjudged the plaintiff in the first case entitled to a divorce on the ground of cruelty, and dismissed the action of the plaintiff in the second case, which was brought for desertion.

1. A former action by the plaintiff, Adele, for cruel and inhuman treatment, was dismissed upon the merits, by the court, on the 20th day of February, 1884. Upon the trial of these cases the court received evidence, against the objection of the defendant, tending to show the state of feeling between the parties, and misconduct towards her on the part of the defendant, antedating the former actions. But

if it was material for any purpose in either case, it was properly received. We think it was admissible as tending to establish a justification for or an explanation of her conduct in leaving his bed, and hence material upon the charge of desertion, and also as tending to explain and characterize the evidence of the acts and conduct relied on as the substantive ground of plaintiff's present cause of action. And this, it appears, was the ground upon which it was received. Besides, he had already given evidence of their relations and her course of conduct towards him during the same period, subject to be considered in either case in so far as material, and this opened the door for evidence of the same character on her part, as necessary to a full understanding of their mutual relations.

2. The defendant, Max Segelbaum, assigns as errors the fourth and fifth findings of fact by the trial court, on the ground that the same are not supported by the evidence. The court therein finds that the allegations in his complaint, charging desertion, are not true, and also finds that the parties lived together as husband and wife from the date of their marriage until February 27, 1884, she having the care of their household and children, except that from the month of January, 1883, until the commencement of this action, she has refused to occupy his bed. The action of the plaintiff, Max, for desertion, was commenced November, 1886, and that of the plaintiff, Adele, for cruelty, on the 24th day of February, 1887. We think there is evidence tending to support the court's findings of fact in respect to the relations and continued cohabitation of the parties, and the only question to consider is the legal conclusion to be drawn therefrom. In the ecclesiastical courts, which had jurisdiction of matrimonial causes, desertion was not a ground for divorce, but the remedy was a suit for the restitution of conjugal rights, where either party separated from the other without any sufficient cause, in which case the court would compel the parties to come together again, if either party was weak enough to desire it contrary to the inclination of the other. 3 Bl. Comm. *94. In those courts, however, a clear distinction is made between marital cohabitation and sexual intercourse, and the jurisdiction extended no further than to enforce the former. *Forster v. Forster*, 1 Hagg. Con. 144, 154. In this country, the remedy for

desertion or abandonment, and the breaking up of the matrimonial relations for the statutory period, without lawful cause, is divorce; and the tenor of the American decisions, following the distinction above referred to, is not to recognize the denial of marital intercourse by either of the parties as in itself a ground of divorce, either under the head of "desertion" or "cruelty." Nor will it justify desertion or other marital dereliction, but is left *in foro conscientiæ*. *Steele* v. *Steele*, 1 MacArthur, 505; *Southwick* v. *Southwick*, 97. Mass. 327; *Stewart* v. *Stewart*, 78 Me. 548, (7 Atl. Rep. 473;) *Morrison* v. *Morrison*, 20 Cal. 432; *Eshbach* v. *Eshbach*, 23 Pa. St. 343; *Reid* v. *Reid*, 21 N. J. Eq. 331; *Kennedy* v. *Kennedy*, 87 Ill. 250; *Cowles* v. *Cowles*, 112 Mass. 298; *Magill* v. *Magill*, 3 Pittsb. R. 25. We think the action for desertion was properly dismissed.

3. In respect to the charges of cruel treatment, there is considerable conflict in the testimony of the parties, and upon the state of the evidence the determination of the trial court must be held final, as in ordinary cases of the trial of issues of fact. *Dayton* v. *Buford*, 18 Minn. 111, (126;) *Marvin* v. *Dutcher*, 26 Minn. 391, (4 N. W. Rep. 685.) The complaint contains general and specific charges, setting forth generally that, during the greater part of the married life of the parties, and for the past seven years, and down to the present time, the defendant has persisted in a course of cruel treatment of the plaintiff, has continued to worry, annoy, and abuse her, and to subject her to personal indignity and bodily injury, adding specific instances of alleged cruelty and personal assault. The plaintiff was obliged to prove acts of cruelty other than those relied on in her former suit, and must rely upon those alleged in her complaint in this action as the substantive ground of her present application. But the court may, in such cases, take into account facts which are not pleaded, when they tend to prove those that are, though they alone would not be the foundation for a divorce. The relations of the parties, their conduct and manner of life, are therefore deemed material, and evidence of conduct and acts outside of those specially alleged may be received as explanatory, and as giving weight and credence to the specific charges relied on and set up in the pleadings. 1 Bish. Mar. & Div. § 727; 2 Bish. Mar. & Div. § 658; *Whis-*

*pell* v. *Whispell*, 4 Barb. 217.   We have carefully examined all the testimony in the case; but it is unnecessary to review it at length in this opinion.   It is evident that the plaintiff's alleged refusal of his marital rights was a source of irritation to him, and that their differences and quarrels engendered and stimulated hostile feelings between them.   Her conduct in a measure provoked acts of intentional annoyance on his part, which were aggravated by repetition, and at times developed into personal assault and violence; but, assuming the testimony on her part to be true, the provocation was palpably disproportionate to the wrongs and injuries inflicted by him, and insufficient to make out a justification therefor.

4. The only remaining question to consider is that of the allowance of alimony.   The court allowed plaintiff as permanent alimony the sum of $8,000 out of the estate of the defendant, payable in instalments.   This, it is claimed by defendant, is excessive, and more than one-third of the value of the defendant's estate.   But, in the light of all the evidence, we do not think that we are warranted in holding that the evidence is insufficient to support the judgment in respect to the sum allowed.   The value of his real property is found to be $8,100, and this is not complained of.   As to other property, the evidence shows that he is an equal partner in a large and well-established dry goods business, in the city of Minneapolis, in good credit and standing; that the firm has over $6,000 in outstanding accounts, and $4,000 on deposit in bank, one-half of which belongs to him.   The defendant also states the value of the stock of goods, as inventoried at wholesale cost prices, with 5 per cent. added for expenses, to be $179,000; that "these inventories were made in the usual course of business, for the purpose of ascertaining how many goods we had on hand.   If I was asked by our creditors to make a statement of our assets and liabilities, I should put the value of the stock at the price as shown by the inventories and our books, and the liabilities at $116,-000."   Though he and other witnesses also testify that the stock is not worth more than 50 cents on the dollar, it is manifest that they refer to a forced sale of the whole stock, which is not a fair basis upon which to estimate the value of his property; for, in that view, his indebtedness would exceed the value of his entire estate.   The defend-

ant, it appears, admitted, in open court, (and his statement is made part of the record,) that they expected to make on the sale of the goods from 15 to 25 per cent. on the cost price; that they bought the goods in the eastern market at wholesale prices, as low as they could be bought, and had inventoried them at that price, with freight added. The interest of the defendant in the partnership assets was properly rated by the court on the basis of the inventory and indebtedness; but it was the duty of the court, in making a cash allowance for the plaintiff, to consider the nature and situation of the property, and the character of the business, which appears to have been done, and the sum allowed is made payable in instalments, one-half during the year 1888, and the remainder in January, 1889. As the amount fixed is about one-third of $25,000 as the valuation of his entire estate, real and personal, it is manifest that a moderate estimate is placed upon his interest in the goods for the purposes of alimony, and payments adjusted so as to avoid a forced sale.

Judgment affirmed.