JAMES K. HUMPHREY vs. WILLIAM R. MERRIAM.

## July 1, 1891.

Deceit—Reliance on Representations—Evidence.—Evidence *held* to show that the plaintiff, in purchasing the stock of a mining corporation, was not induced by reliance upon the truth of representations made by the defendant's agent.

Sale—Written Contract—Evidence of Oral Warranty.—A contract of sale being completed and evidenced by a written bill of sale, prepared by the purchaser, embracing particular warranties as to the property sold, precludes the purchaser from recovering upon oral representations (as warranties) made in the course of the negotiations.

Sale of Stock—Warranty against Assessments.—A warranty by the seller of stock of a corporation that there were no assessments "about to be made" upon the stock, is not broken by the fact that shortly after the sale the stockholders, by agreement, issued new stock to be purchased by themselves, the proceeds to be applied in payment of debts.

Action brought in the district court for Ramsey county, on December 15, 1885, to recover $15,000 damages for alleged deceit and breach of warranty in the sale of stock of the Florence Mining Company, on December 22, 1879. The complaint alleges that the sale was negotiated on behalf of defendant by one Carver, who, during the negotiations, made false and fraudulent representations as to the condition and productiveness of the company's mine at the Black Hills, and as to the company's indebtedness, and that Carver also warranted each of the facts represented. The complaint also alleges the making of a written warranty by defendant that no assessments had been made or were soon to be made against the stock. The complaint does not allege nor was any attempt made to prove that any of the alleged representations or oral warranties were made with defendant's consent or knowledge. After the decision on a demurrer for misjoinder of causes of action, (reported 37 Minn. 502,) the defendant answered, putting in issue the charges of fraud and the making of the alleged representations and warranties by Carver, and the action was tried before *Wilkin,* J. It appeared that the sale was finally consummated between plaintiff and defendant personally, at which time the following instrument, prepared by the plaintiff, was, at his request, signed and delivered to him by defendant. This was introduced in evidence by plaintiff.

"St. Paul, Dec. 23, 1879.

" I have this day sold to J. K. Humphrey $4,285.00 of the capital stock of the Florence Mining & Smelting Company, known as the St. Paul syndicate stock, for which he has paid me the sum of $6,428.57, the same being a part of one of the seven shares of said stock, each amounting to $14,285, and altogether representing $100,000 of the capital stock of said company, and which carries with it the supposed right to take its proportion ($1,071) of $25,000 at par of the Florence mining stock, which is pledged by Robert Floreman to the Merchants' Bank of St. Paul; and the said $4,285, being in one certificate of $14,385, cannot now be delivered, but I undertake and promise to deliver the same to said Humphrey as soon as the secretary of the company returns from the mine so that new certificates can be made. And I represent to said Humphrey that I am the owner of

said stock, and have good right to sell the same in manner and form as above written, and that there are no assessments against said stock and none about to be made. W. R. MERRIAM."

The plaintiff, to show a breach of this warranty, offered to prove that in January following the sale, the directors of the company, pursuant to an agreement of the shareholders and for the purpose of paying its debts, resolved to and did issue additional stock to the members of the corporation at 25 per cent of its par value, and that plaintiff subscribed for and took part of this stock, paying therefor $1,075.68. On the defendant's objection the evidence offered was excluded as not tending to show any breach of the warranty, and the plaintiff excepted. At the close of the evidence for plaintiff, a dismissal was ordered, on defendant's motion, the court holding that " there is nothing to show that Mr. Carver knew these statements to be false, no evidence to show that he did not believe them, and nothing to show an intent to defraud," and also holding that plaintiff was precluded by the written contract from recovering, as upon warranties, upon any oral statements of Carver. A new trial was refused, and the plaintiff appealed. An appeal in a former action for the same alleged deceit is reported in 32 Minn. 197.

*J. W. Pinch* and *Frank Ford*, for appellant.

*Arthur G. Otis* and *Geo. B. Young*, for respondent.

DICKINSON, J. This appeal of the plaintiff from an order refusing a new trial brings here for review the sufficiency of the case made by the plaintiff at the trial to justify a recovery. Upon the plaintiff's case, the court refused to submit the cause to the jury, and dismissed the action. This action was commenced after the decision in *Humphrey* v. *Merriam*, 32 Minn. 197, (20 N. W. Rep. 138,) and is based upon the same facts upon which that action was prosecuted,— that is, for deceit in the sale of mining stock; but in this action the plaintiff seeks to recover, not merely upon the ground that the statements made by the defendant's agent, Carver, were fraudulent, but also for the reason that they constituted a warranty, so that the defendant would be responsible even though a case of fraud be not made out; and the plaintiff further relies upon a written warranty,

executed personally by the defendant.    A former appeal in this ac-
tion (37 Minn. 502, 35 N. W. Rep. 365) presented only a question of
pleading.    In the former action it was decided on appeal that the
direction of the court dismissing the action was right, both because
there was no proof that the representations of the defendant's agent,
Carver, were made fraudulently, with intent to deceive, and because
it was deemed to be apparent that the plaintiff did not purchase in
reliance upon such representations as being true.    The learned judge
who tried this action seems to have thought that "perhaps" the case
here presented as to the plaintiff's reliance upon the representations
was so far different from that reviewed on the former appeal that he
might be justified in submitting that question to the jury; but he did
not rule distinctly upon the sufficiency of the case in that particular,
for the reason that, as to proof of fraud in the representations made,
the case was considered to be not essentially different from that pre-
sented in the former action, the decision of which on appeal, above
cited, he deemed to control the result.    For this reason he dismissed
the action.

An examination of the evidence has led us to the conclusion that
at least as to the former feature of the case—the element of the plain-
tiff's reliance upon the representations of Carver—this case is not
materially different from that before decided here; and since for this
reason, in our opinion, there was no case which ought to have been
submitted to the jury, it will not be necessary to decide whether the
case would have justified the conclusion that the representations
were fraudulently made.    As in the former action, the testimony of
the plaintiff shows that he was not induced to make the purchase by
the representations of Carver, and *because he put faith in such repre-
sentations*.    He had learned that certain of the stockholders, whose
opinion he sought, deemed the property to be very valuable; that one
of them had bought stock at 50 per cent. premium, and another to
whom he applied would not sell.    His previous inquiries and informa-
tion seem to have been such that, as he distinctly admits in his testi-
mony, he went to Carver to buy some of this stock if he could get it,
and so said to Carver at the very commencement of negotiations, al-
though he now says that he does not know that he had then made up

his mind to buy. As to his reliance upon the truthfulness of Carver's representations, the plaintiff's testimony no more justifies a finding in his favor than it did before. As before, he declares that he relied upon the representations, and adds that Carver had his utmost confidence; but it is as apparent as before that the plaintiff did not purchase *because* of any confidence he reposed in Carver's statements. He may have supposed them to be true because of what he had otherwise learned. It is perfectly apparent that he at least did not understand that Carver had ever been at the mine, so as to have acquired personal knowledge of the matters referred to, even if it be not apparent that he knew that Carver had *not* been at the mine. He admits giving the testimony on the former trial, and which is referred to in the opinion of this court thereon, as showing that he did not make the purchase in reliance upon the representations of Carver; and there is nothing in the evidence now before us to modify the effect of that admission, unless the plaintiff is to be deemed to have denied the truthfulness of his former testimony. He does not, however, do that except by repeating the declaration of his confidence in Carver. What was said upon this subject in our former opinion is applicable to the case as it is now presented. It is as apparent now as it was then that the plaintiff was suspicious and distrustful of any representations which Carver might make; that he would not enter into a contract with him; would not purchase until, having the defendant's acknowledgment of Carver's agency, he supposed that, if the facts should be found to be not in accordance with the representations, the defendant would be legally responsible therefor. He bought, not because of the faith reposed in Carver's statements, but because from other sources of information he believed the property to be very valuable, and because he supposed that, if it should turn out otherwise, the defendant was legally bound to make good the representations of his agent.

The plaintiff cannot recover upon the representations of Carver as being obligatory on the defendant as oral warranties, for the reason that, even if they were relied upon in the negotiations, they were merged in the written warranty which the plaintiff prepared, as he says, with much care, and had the defendant execute at the time of

the completion of the purchase.   This embraced the formal represen-
tations by the defendant that he was the "owner of the stock, and
had good right to sell the same in manner and form as·above written,
and that there are no assessments against said stock, and none about
to be made."   This express written warranty legally precluded the
plaintiff from recovering upon the oral representations, made in the
course of the negotiations, as warranties.

But the plaintiff offered evidence to show a breach of the written
undertaking that there were no assessments "about to be made" upon
the stock.   The facts sought to be shown were, in brief, that in Jan-
uary following this sale the stockholders agreed upon the plan of
issuing new stock, which was to be taken at a specified price by the
existing stockholders, and the proceeds were to be applied in paying
debts of the corporation, which plan was carried into effect.   We do
not think that this could be deemed to be an "assessment" on the
outstanding stock, but, even if it were, it would constitute no breach
of the engagement that no assessment was "about to be made."   The
language of this undertaking requires construction.   To construe this
as a warranty that no assessment would be made in the near future
would make the obligation so·uncertain that it is not to be supposed
that this was the intention of the parties when they deliberately pre-
pared and executed this written evidence of the undertaking assumed.
Upon such a construction it could not be known whether the obliga-
tion would be deemed applicable to any assessment which might be
made within a month, or six months, or a year.   The language used
does not necessarily bear a meaning which would leave so uncertain
the undertaking of the defendant.   It is rather to be regarded as ex-
pressing the more definite guaranty that no assessment had been then
resolved upon, or, perhaps, that none was then contemplated.   The
evidence offered was therefore properly excluded.

Order affirmed.