THOMAS COOKENDORFER, PLAINTIFF IN ERROR, v. ANTHONY PRESTON, DEFENDANT IN ERROR.

In an action brought by the indorsee against the indorser of a promissory note, which had been deposited in a bank for collection, the notary public who made the protest is a competent witness, although he has given bond to the bank for the faithful performance of his duty.

He is also competent to testify as to his usual practice.

The cases reported in 9 Wheaton, 582, 11 Wheaton, 430, and 1 Peters, 25, reviewed.

At the time when these decisions were made, it was the usage in the city of Washington to allow four days of grace upon notes discounted by banks, and also upon notes merely deposited for collection.

But since then the usage has been changed as to notes deposited for collection, and been made to conform to the general law merchant, which allows only three days of grace.

Although evidence is not admissible to show that usage was in fact different from that which it was established to be by judicial decisions, yet it may be shown that it was subsequently changed.

THIS case came up, by writ of error, from the Circuit Court of the United States for the District of Columbia, in and for the county of Washington.

The case was this.

On the 17th of May, 1839, E. T. Arguelles gave the following note.

$ 300.                                    *Washington, May 17, 1839.*

On the first day of February next, I promise to pay to Thomas Cookendorfer, or order, three hundred dollars, for value received, negotiable and payable at the Bank of Washington.

(Signed,)                              E. T. ARGUELLES.

(Indorsed,)    THOS. COOKENDORFER.
               ANTHONY PRESTON.

This note was deposited in the Bank of Washington, for collection. Not being paid at maturity by the drawer, it was protested

under the circumstances and in the manner stated in the bill of exceptions.

In February, 1842, a suit was brought by Preston, the indorsee, against Cookendorfer, the indorser, which resulted in a verdict and judgment for the plaintiff.

The following bill of exceptions shows the points of law which were raised and ruled at the trial.

*Memorandum.* Before the jurors aforesaid retired from the bar of the court here, the said defendant, by his attorney aforesaid, filed in court here the following bill of exceptions, to wit : —

### *Defendant's Bill of Exceptions.*

ANTHONY PRESTON *v.* THOMAS COOKENDORFER.

On the trial of this cause, the handwriting of the maker and indorser of the note in the declaration mentioned was admitted, and the plaintiff, to maintain the issue on his part joined, offered George Sweeny, who was admitted to be a notary public for the county of Washington, District of Columbia, lawfully commissioned and sworn, and by him they offered to prove that he, as such notary, was required by the Bank of Washington (who then held the said note for collection) to demand payment of the note mentioned in the declaration, and the said note was delivered to him by the said bank ; and he did thereupon, on the 4th day of February, 1840, present the said note at the said bank, and did demand payment thereof at the said bank, and he was answered by the proper officer of the bank, " that there were no funds there for it " ; that he, the said notary, did, on the next day, to wit, the 5th day of February, 1840, deliver to the defendant a notice in writing, which notice being now produced to the witness by the defendant, is in the words and figures following : —

### *Notice of 5 February, 1840.*

*Washington, February 5th,* 1840.

SIR : — A note drawn by E. T. Arguelles, dated the 17th May, 1839, for three hundred dollars, payable at 1 – 4 February, 1840, due, and by you indorsed, and for which you are accountable to the President and Directors of the Bank of Washington, has been this day protested for non-payment.

Your obedient servant,

GEORGE SWEENEY, *Notary Public.*

THOS. COOKENDORFER, Esq.

And he did, also, on the said 5th day of February, 1840, extend and record in his notarial register the protest of the said note, which is in the words and figures following : —

Cookendorfer v. Preston.

*Protest.*

$300.                          WASHINGTON, *May* 17, 1839.

On the first day of February next, I promise to pay to Thomas Cookendorfer, or order, three hundred dollars, for value received, negotiable and payable at the Bank of Washington.

  (Signed,)      E. T. ARGUELLES.

(Indorsed,) THOS. COOKENDORFER,
    ANTHONY PRESTON.

DISTRICT OF COLUMBIA, *Washington County, sct.*

Be it known, that on the 4th day of February, 1840, I, George Sweeny, notary public, by lawful authority duly commissioned and sworn, dwelling in the county and District aforesaid, at the request of the President and Directors of the Bank of Washington, presented at the said bank the original note, whereof the above is a true copy; and demanded there payment of the sum of money in the said note specified, whereunto I was answered, — " There are no funds here for it."

Therefore, I, the said notary, at the request aforesaid, have protested, and by these presents do solemnly protest, against the drawer and indorser of the said note, and all others whom it doth or may concern, for all costs, exchange, reëxchange, charges, damages, and interests suffered and to be suffered for want of payment thereof.

In testimony whereof, I have hereunto set my hand and affixed my seal notarial, this 5th day of February, 1840.

[SEAL.]    GEORGE SWEENY, *Notary Public.*

Protesting, $1·75.

Recorded in protest-book G. S. No. 3, page

And the said witness further testified, that he copied the form of the said notice from a form used by Michael Nourse, one of the oldest notaries in the city, and largely employed as notary, and that he made the demand and gave the notice in this case according to his usual practice, and that his said practice conformed, so far as he knows and believes, to the practice of the other notaries in the city of Washington.

And the plaintiff offered further evidence tending to prove the said practice of said notaries to be according to the statement made by Mr. Sweeny, and that the usual practice was, when a notice was to be sent abroad, to put it into the post-office, and date it on the third or last day of grace ; but when the notices were to be delivered in the city of Washington, a latitude was allowed to the notary, either to deliver the notice on the third or last day of grace, or the day after the last day, and in all cases to date the notice on the day of its delivery, and the usage is to extend the protest on the day on which the notice is given, as in this case, stating the de-

mand to have been made on the last day of grace, and the protest to be dated the same day on which the notice is dated.

And the said George Sweeny, on cross-examination, testified that he usually acted on behalf of the said Bank of Washington, at its request, as the notary in regard to notes and bills in said bank, and that he had given a bond, with security, to said bank, in the penal sum of $ 10,000, for the faithful performance of his duty as notary public in regard to said business, and that the note in controversy had been deposited by plaintiff in said bank for collection.

And the counsel for the defendant objected to the admissibility and competency of said George Sweeny as a witness, and the court overruled the said objection, and permitted the said Sweeny to be sworn, and to testify as aforesaid to the jury, to which the defendant, by his counsel, excepted, and prayed the court to seal this bill of exceptions, which is done accordingly.

And the said counsel for the defendant further objected to the admissibility and competency of the said testimony upon the subject of the practice and usage spoken of by the witness, but the court overruled the objection, and suffered the said testimony to go to the jury ; whereupon the said counsel excepted.

And the said counsel for the defendant thereupon moved the court to instruct the jury, that the said evidence was not sufficient, if believed to be true, to show that payment of said note had been duly demanded and refused, and that due notice of such dishonor had been given to defendant so as to bind him.

But the court refused to give such instruction.

To each of which rulings of the court, in permitting the evidence as aforesaid to go to the jury, in refusing the instruction as prayed, the defendant, by his counsel, excepts, and prays the court to seal this bill of exceptions, which is accordingly done, this 7th day of April, 1843.

W. CRANCH. [SEAL.]<br>JAMES S. MORSELL. [SEAL.]

The cause was argued by *Mr. Bledsoe* and *Mr. Coxe*, for the plaintiff in error, and *Mr. Bradley*, for the defendant in error.

*Mr. Bledsoe*, for plaintiff in error, made three points : —

1. That the court erred in admitting the testimony of the notary public.

2. That the court erred in refusing the instruction asked for by the defendant's counsel.

3. That the declaration is radically and essentially defective.

1. It may be said, that the objection to the evidence of the notary public goes to his credibility rather than to his competency,

Cookendorfer v. Preston.

But inasmuch as the bank would be absolved from responsibility if the notary committed an error, and all the liability to the party injured by the fault would devolve upon the notary, it clearly became his interest to exonerate himself from it by proving that he committed no fault. His interest was strong and direct. Bayley on Bills, 251 ; 20 Johnson, 372 ; same case, 3 Cowen, 562.

If the plaintiff should fail in recovering from the indorser, on account of the ignorance or neglect of the notary in making a sufficient protest, the latter would become personally liable. His interest is to protect himself by securing a recovery from the indorser.

2. Supposing the evidence to be admissible, it is not sufficient.

A note must be presented for payment on the day that it falls due. When is that ? On the last day of grace. The time of grace formed a part of the contract by the indorser. 1 Peters, 31.

But in this case it was presented on the third day of grace. This would have been proper under the general law merchant, if that law prevailed in the District of Columbia. But it does not. It is controlled by a local usage, which is to allow four days of grace. 1 Peters, 34 ; 9 Wheat. 582.

Such an usage is part of the contract, whether the parties were acquainted with it or not. 11 Wheaton, 430.

A presentment too soon is a nullity. Bayley on Bills, 236.

No proof was offered in this case of the four days usage, but as it had been once proved and established, we were not bound to prove it again. It then became a part of the law. 1 Peters's C. C. R. 230 ; 2 Starkie (7th Lond. ed.), 360.

In 1 Peters, 34, there was no proof of this usage, but the court relied upon its having been proved before. There was proof of another usage, but none of that now in question.

It is apprehended that the counsel on the other side mean to make a distinction between notes discounted by banks and those left for collection ; and to contend that the usage of four days grace applies only to notes discounted by banks. But this distinction is not recognized in the case in 1 Peters, 33, 34.

The usage being once established and recognized by law, the court below erred in admitting evidence to contradict it. 9 Law Lib. 40 ; 2 Burr. 1216, 1220, 1222, 1224, 1228 ; 1 Call, 159 ; 2 Starkie, 360.

It is an usage in other places to allow four days grace, and this is recognized as valid in the books. Chitty on Bills, 407, note ; Bayley on Bills, 235, note, speaking of this one.

It is contrary to the policy of the law to leave these questions open for the jury. Chitty on Bills, 402.

The law merchant is built upon usage taken in connection with the principles of justice, not being found in any statutes. Evidence to unsettle it ought not to be received. 1 Dall. 265 ; 3 Wash.

C. C. R. 149 ; 5 Binney, 207 ; 6. Binney, 420, 450 ; 1 Hall, 619.

3. The evidence does not support the declaration, which says that the note was presented on the third day of grace. The notice does not state the day of presentation, saying only that it was protested on the 5th of February. The note was due either on the 4th or 5th. We say it was not due until the 5th. If so, it was premature to present it on the 4th, the day on which the counsel on the other side say it was due.

*Mr. Bradley*, for defendant in error.

As to the first point. A notary is not an officer of the law to demand payment of notes, out is merely an agent of the bank. It has been said, that the bank would not be responsible for an error of the notary, and the case in 3 Cowen cited to sustain it. But in that case the bank was held responsible.

The bank is the agent of the deposition, and the notary is the agent of the bank. In an action by the holder against the indorser, the competency of the notary cannot be affected. If the action were against the bank, the conclusion might be different. The competency of a notary as a witness is discussed in 2 Bailey's S. C. Rep. 183.

An agent is generally a competent witness as to matters within his agency. 1 Bingham, 368 ; 6 Lea. R. 29 ; 1 N. H. Rep. 192 ; 5 Martin, N. S., 310. See also 15 Wend. 314.

2. The notary not only proved his own acts, but the general usage and custom of allowing different days of grace upon notes discounted by a bank and those merely deposited for collection. It is admitted, that if courts have, by their decisions, settled and established what the usage is, it becomes as binding as statute law. The general usage in the United States is to allow only three days of grace, and the special custom of this District is to allow four days only as to those notes discounted by a bank. 9 Wheat. 582, 583 ; Story on Prom. Notes, 242, note.

In the case of Bank of Washington *v.* Triplett and Neale, 1 Peters, 33, 34, the report of the case does not show that any evidence was taken to establish usage, but the original record shows that it was so. (Here *Mr. Bradley* produced the original record.) Usage depends on the practice of banks. But this may have changed between 1824 and 1840, and if so, can we not show it ? Is a usage, once recognized by a court as existing, to last for ever without any change ? If the people in the District should conform to the custom in other parts of the United States, shall we be precluded from showing it by evidence ? It is said that the evidence given was not sufficient. But the existence of usage is a fact of which the jury are to judge, and the court was right in leaving it to them.

3. The declaration says that demand was made on the third day

of grace. But the fact of notice on that day is immaterial ; it always says on the day and year aforesaid.

*Mr. Coxe,* for plaintiff in error, in reply.

As to the competency of the witness. The notary was a public officer, and the bank could not be held responsible for his mistakes. It is the duty of the bank to collect notes which are deposited for collection, and for this purpose it must employ competent agents. It is only responsible in case it employs incompetent ones. But where it uses due diligence according to the law of bailments, it is not liable for their errors. In the case in 20 Johnson, the bank was held responsible because it did not employ a public officer, but an agent of its own. In the present case, the bank would be blameless, but the notary is responsible to the holder of the note, if, from any negligence or ignorance on the part of the notary, the holder were to lose his remedy against the indorser. Besides, he has given a bond to the bank, in a penalty of $ 10,000, for the faithful performance of his duty. If a person, standing in such a situation, is ever admitted as a witness, it is only from necessity, and then he is only allowed to prove his own acts. But here he not only proves what he did, but goes on to testify as to the regularity and correctness of his actions, and that, too, by referring to other persons. For example, he says that he " copied from an old notary." The old notary himself could have proved this much better. The usage is to extend the protest on the last day of grace. The notice here says, " this day protested," &c., that is, on the 5th ; but it does not say whether the demand was made on the 3d or 4th day.

Was any evidence admissible in this case to show usage ? There have been three decisions of this court upon the subject. In the first, 9 Wheat. 582, the note happened to be discounted at bank. But can a contract be changed without the party's being aware of it, merely by the circumstance that the note has been subsequently discounted at bank ?

In 11 Wheat. 431, stress was laid upon the note's being made for the purpose of being negotiated.

In Bank of Washington *v.* Triplett and Neale, 1 Peters, both the above cases came up again for review, and the original record has been referred to by *Mr. Bradley,* to show that evidence was given upon the subject of usage. It was so. That evidence says, that it was the usage to demand payment of notes which were deposited for collection on the day after the third day of grace.

(*Mr. Bradley* referred to the record, and said that the original practice was changed by the banks, and demand made on the third day.)

It is contended by the other side, that there is a difference between discounted notes and those deposited for collection. But there is no allusion to this in the testimony, and no such distinction

made in any part of the record.   The same usage appears to be applicable to all.

Mr. Justice McLEAN delivered the opinion of the court. ·

. The questions in this case arise on the rulings of the court, to which, at the trial, exceptions were taken.

Preston, the defendant, as the indorsee of a promissory note, brought an action against the plaintiff in error, the indorser.   The signatures of the maker and indorser were admitted.   These grounds of error are assigned:—

1. That the court erred in admitting the testimony of the notary public.

2. In refusing the instructions asked by the defendant's counsel.

3. The declaration is defective.

George Sweeny, the notary who protested the note, testified that it was delivered to him by the Bank of Washington, who held it for collection, to demand payment, and that he did thereupon, the 4th of February, 1840, present the note to the bank, and demanded payment, but was informed by the proper officer that there were no funds to pay it, on which he protested the same for non-payment ; and on the next day, the 5th of February, he delivered to Cookendorfer, the plaintiff in error, the following notice, in writing : —

"*Washington, February 5th,* 1840.

"Sir, — A note drawn by E. T. Argulles, dated 17th May, 1839, for three hundred dollars, payable 1 – 4 February, 1840, due, and by you indorsed, and for which you are accountable to the president and directors of the Bank of Washington, has been this day protested for non-payment."

And the witness stated, "that he made the demand and gave the notice according to his usual practice," and "that said practice conformed, as far as he knows and believes, to the practice of the other notaries in the city of Washington."

And other evidence was given, conducing to show that the usual practice in such cases was, "when a notice was to be sent abroad, to put it into the post-office, and date it on the third or last day of grace ; but when the notice was to be delivered in the city of Washington, a latitude was allowed to the notary either to deliver the notice on the third or last day of grace, or the day after the last day, and in all cases to date the notice on the day of its delivery ; and the usage is to extend the protest on the day on which the notice is given, as in this case, stating the demand to have been made on the last day of grace, and the protest to be dated the same day on which the notice is dated."

It is insisted that the notary, by reason of his interest in this suit, is an incompetent witness.

In the case of Smedes v. Utica Bank, 20 Johns. R. 372, it was held that a bank which receives a promissory note for collection, to charge the indorser, by a regular notice, is liable for neglect; but this is not the case where the bank delivers the note to a notary, who is a sworn public officer, and whose duty it is to make the demand and give the notice. The same doctrine is laid down in 3 Cowen, 662. From this it is argued that the notary is liable directly to the holder of the paper for neglect, as a public officer, and not to the bank, as its private agent. That in the latter case he would not be liable to the holder of the paper, but might be called on to indemnify the bank which had suffered on account of his laches.

A notary is a competent witness on the same ground that other agents are admissible. They are always responsible to their principals for gross negligence, and yet, from the necessity of the case, they are competent witnesses to prove what they have done in the name of their principals.

It appears that the witness, who generally acted as notary for the Bank of Washington, had given a bond, with security in the sum of ten thousand dollars, for the faithful performance of his duty as notary public, in the business of the bank committed to him. But this, it would seem, does not render him incompetent. "The cashier or teller of a bank is a competent witness for the bank, to charge the defendant on a promissory note, or for money lent or overpaid, or obtained from the officer without the security which he should have received; and even though the officer has given bond to the bank for his official conduct." Greenleaf's Ev. 485; The Franklin Bank v. Freeman, 16 Pick. 535; United States Bank v. Stearns, 15 Wendell, 314.

It is further insisted, that if the notary was competent to state his own acts, he could not prove the usage under which he acted. He stated, that in making the protest and giving notice he pursued "his usual practice," "and, so far as he knew, the practice of the other notaries in the city." Now it would be an exceedingly technical rule which would permit a notary to say what he had done in a particular case, but prohibit him from stating that he acted in such case according to his usual practice. And this was all the witness did say; for although he spoke of his belief as to the practice of other notaries in the city, he does not state that he had a knowledge of their practice.

The instruction prayed by the defendant's counsel, and the refusal of which is the second ground of error assigned, was, "that the said evidence was not sufficient, if believed to be true, to show that payment of said note had been duly demanded and refused, and that due notice of such dishonor had been given to defendant, so as to bind him."

In the case of Renner v. The Bank of Columbia, 9 Wheat.

582, a suit was brought against the indorser of a note which had been negotiated in the Bank of Columbia. Payment was demanded, and the note protested on the fourth day after that mentioned in the note as the day on which it became payable. This was proved to be the usage of the bank, and this court held the demand was made at the proper time. In Mills v. The Bank of the United States, 11 Wheat. 430, this court held, that " when a note is made payable or negotiable at a bank, whose invariable usage it is to demand payment and give notice on the fourth day of grace, the parties are bound, by that usage, whether they have a personal knowledge of it or not."

In the Bank of Washington v. Triplett and Neale, 1 Peters, 25, this court sanction the usage to make the demand of payment of a note which was left in the bank for collection on the day after the last day of grace, placing such notes, in this respect, on the same footing as notes discounted by the bank. And that such was the usage in 1817, when payment on the note or bill in question was demanded, was proved in that case. But it was also proved, as appears from the record, that the usage was changed in 1818 by all the banks of Washington and Georgetown, " so as to conform to the general commercial usage of demanding payment on the last day of grace." This referred to notes or bills sent to the banks for collection, and of course embraces all notes not negotiated in bank.

Where a usage is sanctioned by judicial decisions, it becomes the law of the place, and no further proof is necessary to establish it ; and it is said, that no evidence is admissible to controvert the fact, as laid down by the court. Edie v. East India Co., 2 Burr. 1221.

Now if the usage, as sanctioned in the cases above cited, governs this case, it is clear that such diligence has not been used as to charge the indorser. For, under that usage, the demand should have been made on the day after the third day of grace, when it was in fact made on the third day of grace.

This objection is met by the defendant in error by the proof of the usage as stated ; which he insists governs all notes not discounted by the banks of the District. The note in question was not discounted by the Bank of Washington, it being merely left there for collection. But it is insisted that this usage cannot be shown to overthrow that which has been sanctioned by judicial decisions. A local usage may be changed in the same mode by which it was established. But parol evidence is not admissible to show that the usage was different, at the time, from what the courts have solemnly adjudged it to be. The law merchant is founded upon custom, and every modification of it by local usage shows that, like other laws, it may be changed.

The usage proved in this case, except in Bank of Washington v.

Triplett and Neale, and that is explained by the evidence cited, does not conflict with that decided by this court, if the latter be limited to notes discounted by the banks, and the former applies to all other notes payable in the District. In other words, that the law merchant should be modified by the usage only as to demand and notice on notes discounted by the banks. And it would seem, from the decisions above cited, the usage to demand payment the day after the third day of grace had its origin with the banks, and has not been extended, since 1818, to paper not discounted by them. On all other paper, a demand is made on the third day of grace, and the "usage is to extend the protest on the day on which the notice is given, stating the demand to have been made on the last day of grace, and the protest to be dated the same day on which the notice is dated." Now a demand and protest on the last day of grace, and a notice on the following day, come strictly within the law merchant. And this was the diligence used in the present case, except the formal date of the protest on the day of the notice. No confusion can, therefore, arise from this general commercial usage, as it conforms to the established law. No inconvenience has arisen, it is supposed, from the bank usage in the District, which has been so long and so firmly established.

No defects in the declaration are perceived, and none have been pointed out to us, which are not cured by the verdict.

Upon the whole, we affirm the judgment of the Circuit Court, with costs.