JAMES K. HUMPHREY *vs.* WILLIAM R. MERRIAM.

June 12, 1884.

Action for Deceit—Sale of Mining Stock—Fraudulent Representations—Intention to deceive.—In an action founded upon the fraud and deceit of the defendant in making false representations, it is necessary to prove that they were *fraudulently* made; an *intention to deceive* is a necessary element or ingredient. It may be proved by showing either that the party knew that the statements were untrue, or that, not knowing whether they were true or false, he did not honestly believe that they were true; or, not knowing whether they were true or false, he misstated the source or extent of his knowledge. But in each case there would be a falsehood uttered with intent to deceive. In the first case, a knowingly false assertion as to the fact; in the second, as to his belief; and in the third, as to his knowledge of the fact; and in each case the intent to deceive would be a necessary inference.

Same—Reliance on Representations.—It is also necessary for the plaintiff in such an action to prove that he believed and relied on the false representations, in order to entitle him to recover.

Same—Evidence.—The evidence considered, and *held* as not tending to show that the representations were fraudulently made, or that plaintiff believed them to be true, and relied on them.

Appeal by plaintiff from an order of the district court for Ramsey county, *Brill,* J., presiding, refusing a new trial, the action having been dismissed by the court upon the trial when the plaintiff rested.

*H. J. Horn* and *W. K. Gaston* for appellant.

*Chas. E. Otis* and *Geo. B. Young,* for respondent.

MITCHELL, J. This was an action for damages for deceit in the sale of stock of the Florence Mining Company. The deceit consisted, as alleged by plaintiff, in the false and fraudulent statements of one Carver, defendant's agent, who made the sale, as to the value, condition, and productiveness of the company's mine, and as to the amount of its indebtedness. Assuming that the alleged representations were made, and that they were untrue, (of which facts there was competent evidence,) and that they were material, (which some of them un-

doubtedly were,) it was incumbent on plaintiff in such an action also to prove (1) that they were *fraudulently* made; and (2) that he believed them, and relied on them in making the purchase. *Deceit* is the type of fraud, and an *intention to deceive* is a necessary element or ingredient. False representations do not amount to a fraud at law in such case unless they be made with a *fraudulent intent*. Of course, to constitute a fraudulent intent, it is not necessary that the party knew them to be false. The intent to deceive may be shown in either of three ways: (1) That the party knew his statements to be false; or (2) that, having no knowledge of their truth or falsity, he did not believe them to be true; or (3) that, having no knowledge of their truth or falsity, he yet represented them to be true of his own knowledge. In the first case there would be a knowingly false assertion as to the fact, in the second, as to his belief, and in the third as to his knowledge, of the fact; and in each case the intent to deceive would be a necessary inference. But in each case the *intent to deceive* must exist, and must be proved. If this intention is absent, there is no fraud. Hence if Carver honestly stated what he believed to be the facts, and did not misstate the source or extent of his information, the defendant is not liable in this action. Kerr on Fraud & Mistake, 54, 55, *et seq.; Pasley* v. *Freeman,* 2 Smith, Lead. Cas. (7th Amer. Ed.) 92, and notes; *Chandelor* v. *Lopus,* 1 Smith, Lead. Cas. 299, and notes; *Haycraft* v. *Creasy,* 2 East, 92; *Stone* v. *Denny,* 4 Met. 151; *Marsh* v. *Falker,* 40 N. Y. 562; *Chester* v. *Comstock,* Id. 575; *Meyer* v. *Amidon,* 45 N. Y. 169; *Oberlander* v. *Spiess,* Id. 175.

The evidence in this case is so voluminous that it is impossible to state it in full, and the different parts of it are so connected that a statement of a portion would give an imperfect and inaccurate idea of the case. But, after reading the whole carefully, we are of opinion that it wholly fails to show that Carver's representations were fraudulently made, that is, made with intent to deceive. We find nothing tending to show that he knew them to be false, or that he did not honestly believe them to be true, or that he misstated the extent or sources of his information. On plaintiff's own showing it is clear that Carver had never been to the mine, and hence had no personal knowledge of its character and condition, but made his statements

upon reports received and information derived from others, and that plaintiff knew that fact.

2. We also think the evidence utterly fails to show that plaintiff believed these representations, and relied on them in making the purchase. It is true that in his examination in chief he states generally that he relied on them; but his cross-examination conclusively shows that he did not rely on them *as true* when he made his purchase. He makes the following among other statements: "I wouldn't let him [Carver] touch the money; wouldn't take his word that he was agent for the man. I considered that what he said was wind. I saw a good many men to see how far Carver's representations were corroborated. *I was anxious to see how I could protect myself and take the stock.* I didn't intend to take Carver's word that he was Merriam's agent. *I wanted to see that I was dealing with a responsible man.* These representations of Carver's were as the wind, unless they were certified to by the character of an honest man. I didn't mean that he should get any money, and I meant that Mr. Merriam should get my money, and should have the right to say that these things were true." Again, when asked if he would believe anything Carver said, he answered, "No." When he went to see Merriam he says he made him the speech which had been taught him by his attorneys on a former occasion: "I have bought of you, through your agent, Mr. Carver, some Florence." When asked his object in making this speech, he replied, "To see whether he would say that Carver was or was not his agent." The evidence also shows that, so far from believing the statements of Carver, he interviewed numerous other parties, stockholders and others, to ascertain what they knew about the mine, and what value they placed upon the stock, and that, so far as he made the purchase upon a *belief in the existence of facts,* he acted upon what information he got from these parties, and not upon what Carver told him.

The evidence clearly shows the plaintiff's position to be just this: He knew that mines were proverbially uncertain, and might prove very profitable or a failure. He found that others had faith in this mine, and therefore he had; but he wished something more certain, and wanted a warranty from a responsible man, so that he could keep

his stock and get his dividends from the mine if it turned out well, or get his money back from the defendant if it did not. Whatever may have been plaintiff's belief as to the condition or value, present or prospective, of the mine, that belief was not based upon the statements of Carver. His only reliance upon Carver's statements consisted, not in his belief of their truth, but because he thought, if false, Merriam would be responsible for them. He made his purchase, not because of any belief in their *truthfulness,* but because he thought Merriam would be liable as warrantor to make them good if they proved untrue. On such a state of facts, as the court below well remarked, if plaintiff made out anything, it was a cause of action on a warranty and not for deceit.

On either or both of these grounds the action was properly dismissed.

The plaintiff, however, suggests that he has set up a second cause of action for a rescission of the contract, and claims that in equity, when the misrepresentation of a fact relied upon by the injured party to a contract operates as a fraud upon him, he is entitled to a rescission, although the misrepresentation was made in the belief that it was true. It may be doubted whether there is any such different rule in equity, in an action to rescind, from that which obtains in an action at law for deceit. But, waiving this, it is sufficient answer that the complaint only sets up one cause of action,—an action for damages for deceit,—and the case was tried throughout on that theory.

Judgment affirmed.