E. H. LUNDY v. W. S. SURLS, Appellant.

**Fraud in the sale of land:** DEFICIENCY IN ACREAGE: RECITALS OF AB-STRACT. Mere delivery of an abstract of title to land sold, containing a correct epitome of the contents of the public records

with respect to acreage, and not purporting to state the actual acreage, is not such a false representation as to the number of acres as will support an action for deceit; although the acreage is in fact less and the party delivering the abstract knew of that fact at the time.

*Appeal from Hardin District Court.*—Hon. W. D. Evans, Judge.

Tuesday, November 23, 1909.

Action for damages resulted in a verdict for plaintiff and judgment thereon. The defendant appeals. *Reversed.*

*Kenyon, Kelleher & O'Conner* and *Ward & Williams,* for appellant.

*Lundy & Wood,* for appellee.

Ladd, J.—The plaintiff exchanged certain property in Eldora for the northwest fractional one-fourth of section 30 in township 90 N., of range 20 W. of fifth P. M., and charged that defendant orally represented that the tract was one hundred and fifty-six and sixty-five one hundredths acres, whereas it actually measured but one hundred and thirty-two acres, and because of such difference demanded damages. In the course of the negotiations the defendant upon request produced an abstract of title with caption: "Abstract of title to the following described premises situated in the county of Franklin, State of Iowa, to wit: The northwest quarter of section (30) thirty, township (90) ninety, range (20) twenty, containing one hundred and fifty-six and sixty-nine one-hundredths acres according to the original entry book." The sixth and twenty-second transfers also recited "containing one hundred and fifty-six and sixty-nine one-hundredths acres," the seventh that number "more or less," and in others the quarter was de-

scribed as fractional. There were but one hundred and thirty-seven and twenty-two one-hundredths acres. The plaintiff testified that defendant then said the number of acres was as indicated in the abstract, and this was repeated after going into the house, while defendant denied having said anything at the time, but testified to stating in the house that the tract contained from one hundred and thirty-four to one hundred and thirty-seven acres. Each was somewhat corroborated.

With reference to the abstract the court instructed the jury:

Such abstract of title contains a statement to the effect that the tract in question contains one hundred and fifty-six and sixty nine one-hundredths acres. If you find that the defendant delivered such abstract to the plaintiff at the time of the negotiations between them, and that at the time he so delivered such abstract he knew that it contained such statement concerning the acreage, and if the plaintiff at the time read such statement in the abstract, then the delivery of such abstract under such circumstances would amount to a representation on the part of the defendant that the tract in question did contain one hundred and fifty-six and sixty-nine one-hundredths acres. But if you find that the defendant Surls orally informed the plaintiff that the tract in question contained a less number of acres than there was shown upon such abstract, then such oral statement would prevail, and in such case the delivery of the abstract could not be regarded as a representation on the part of defendant, concerning the acreage.

The instruction was erroneous in that it proceeds on the theory that the abstract was something more than an exemplification of the public records. We held otherwise in *Fagan v. Hook,* 134 Iowa, 381. The caption merely recited the number of acres "according to the original entry book," and no proof of its inaccuracy was adduced, nor was there any evidence that the recitals in the record of the several deeds were erroneous. The abstract purported to

epitomize the contents of these records, and in no instance to assert any fact *aliunde*. This being so, the defendant, in the absence of evidence to the contrary, must be assumed in handing the abstract to plaintiff to have represented no more than what the abstract indicated, i. e., that the record was as stated therein. Whether he knew of the recitals therein or that the actual acreage was less than as shown by the book of the original entry could make no difference, save as these circumstances might be considered a part of a scheme to deceive, for, even though known, this did not impinge on the verity of the abstract. Of course, truth may sometimes serve the purposes of deception, but not when undisguised and employed for a proper purpose, as was this abstract, if as stated in the instruction. We do not say that such evidence is not appropriate for consideration in connection with the conversation had at the time in determining whether deception was practiced. What we do say is that the mere delivery of an abstract of title containing the recitals mentioned, even though the party in delivering it may have known thereof and that the acreage was actually less than appears of record, was not alone such a representation as will support an action for deceit. Why? Because the abstract was a truthful epitome of the contents of the public records, and as it did not purport to state the actual acreage of the land it ought not to be held when considered alone to be a misrepresentation of any fact, much less an intentional misrepresentation as construed in the instruction condemned.

Other assignments of error require no attention. *Reversed.*

Evans, C. J., took no part.