CLINTON A. PETRIE and Another v. A. D. CLARKE and
Others.[1]

June 19, 1914.

Nos. 18,553—(101).

**Fraudulent representations — evidence.**

The evidence justifies a finding that all of the defendants are liable for
fraudulent misrepresentations whereby the plaintiffs were induced to pur-
chase certain lands.

Action in the district court for Hennepin county against A. D.
Clarke, A. D. Clarke & Co. and C. M. Best to cancel certain instru-
ments, to recover $19,621.60, and to restrain defendants from nego-
tiating or transferring certain mortgages. The case was tried before
Steele, J., who made findings and ordered judgment in favor of plain-
tiffs for $7,324 and for the relief demanded. From orders denying
motions to amend the findings or for a new trial, defendants took
separate appeals. Affirmed.

*H. F. Schultz, George H. Selover* and *Edwards, Longley &
Ransier,* for appellants.

*Mercer, Swan & Stinchfield,* for respondents.

DIBELL, C.

This is an action to rescind an executed purchase of land. There
were findings for the plaintiffs. The defendants appeal from the
order denying their motions for a new trial.

In December, 1909, the defendant Best and the plaintiffs had some
negotiations relative to the purchase of two sections of land in Mercer
county, North Dakota. The lands were then owned by the defendant
A. D. Clarke & Co., a corporation, of which the defendant A. D.

[1]Reported in 147 N. W. 1097.

Clarke was an officer. Best did not own the lands, but shortly before had had some talk with Clarke & Co. about buying.

In December, 1909, Best entered into a contract with the plaintiffs relative to the sale of the lands to them. A few days later he entered into a contract with Clarke & Co. for their purchase. The plaintiffs were to give $17,000 for the two sections, $11,000 in cash and $6,000 by the assumption of mortgages which Best executed to Clarke & Co. when he purchased. Best gave for the land something like $9,800. Later the transaction was carried out and deeds and mortgages passed.

In the course of the negotiations Best repeatedly told the plaintiffs by letter and orally that he had not seen the lands and that he did not know of their character or quality and that they must make their own investigations. The court finds on sufficient evidence that Best had an understanding with Clarke, acting for the company, that he, Clarke, would give a statement in writing that the land was 75 per cent tillable and no waste, and that Best told the plaintiffs that Clarke would give a written guarantee to that effect. The first contract entered into by Best with the plaintiffs contained this clause: "Guaranteed by owners to be $\frac{3}{4}$ tillable land." In a letter of January 5, addressed to Best and his assigns, Clarke made this statement:

"That being for the past thirty or more years engaged in farming and sale of farm lands, do claim that no part of the above described sections are waste lands, and that in my opinion fully 75% or more on each section is tillable, and that balance is grazing land of excellent quality."

There is no claim that this land was tillable in accordance with this representation. Practically none of it was tillable. There was a large amount of waste, by which is meant hilly, barren and rocky land, not usable for any purpose. There was some grazing land. There is no claim that the representation as to the lands was not grossly false.

In Humphrey v. Merriam, 32 Minn. 197, 20 N. W. 138, it was held, in effect, that one who did not profess to have personal knowledge, and gave the source of his information, was not guilty of action-

able misrepresentation. The defendant Best claims that under this rule he is not liable.

The contention of the plaintiffs goes far beyond this. They claim that the defendants Best, and Clarke & Co., and Clarke, were working together to sell these lands and that the guarantee or representation of Clarke was to be made use of in making the sale. Best did not own them, but knew that he could get them for $7.50 or $8.00 an acre. His first negotiations look much as if he were the agent of Clarke & Co.; and there is a suggestion that the deeds were made to run from Clarke & Co. to Best to avoid the necessity of the wives of the plaintiffs signing the mortgages.

A finding of fraud on the part of Clarke and A. D. Clarke & Co. meets no difficulty. The question whether all three of the defendants were so connected with the transaction that Best is equally liable with the others is one which merits careful consideration. Fraud cannot be proved by a cry of it. We have all gone over the evidence at length and given it the most thorough consideration which time permits. We are of the opinion that the whole question was one of fact and that under the evidence the trial court could with propriety find that all of the defendants participated in a fraud practiced upon the plaintiffs and which induced the purchase of the lands. The findings contain much of argument and evidentiary matter, and are lacking in statements of ultimate fact. Their precise meaning is not always apparent; but we take it that the gist of the fraud which we find to be justified by the evidence, and Best's connection with it, are sufficiently found.

The defendants claim that the conclusions of law direct a judgment which sets aside contracts between the defendants in which they alone are interested. If this be so it is a matter for them. Within 10 days after the going down of the remittitur the defendants may take such proceedings among themselves as they are advised; but such proceedings shall not affect nor delay the relief granted the plaintiffs.

We see nothing in the claim of a ratification or affirmance calling for discussion.

Orders affirmed.