## FIDELITY & DEPOSIT CO. OF MARYLAND v. DROVERS' STATE BANK.

(Circuit Court of Appeals, Eighth Circuit. October 22, 1926.)

No. 7391.

**1. Fraud ⟐64(3).**

Evidence in action by surety company against bank for damages sustained by it on bond written on application secured by bank employee *held* insufficient for jury on issue of bank's deceit.

**2. Fraud ⟐13(2).**

Action for deceit must be founded on false statement, knowingly or recklessly made, with intent to deceive.

**3. Evidence ⟐215(1).**

Where written statement of third party is presented by one of parties to transaction, it does not bind the latter as his statement, unless he vouches for its truthfulness.

**4. Courts ⟐348.**

Under Comp. St. § 1464, competency of testimony in civil action in federal court is determined by law of state in which court is held.

**5. Witnesses ⟐140(1)—Employee of bank held not interested in litigation against it, nor disqualified from testifying to conversation with person since deceased (Gen. St. Minn. 1923, § 9817).**

In action by surety company against bank to recover loss sustained on bond written on application obtained by bank employee, *held*, such employee's possible liability to bank for any recovery against it did not make him a "person interested in the event," and disqualified, under Gen. St. Minn. 1923, § 9817, from testifying to conversation with representative of surety company since deceased.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Person Interested.]

In Error to the District Court of the United States for the District of Minnesota; William A. Cant, Judge.

Action by the Fidelity & Deposit Company of Maryland against the Drovers' State Bank. Judgment for defendant, and plaintiff brings error. Affirmed.

John A. Burns, of St. Paul, Minn. (Kerr, Nelson, Burns & Mohan and Walter T. Ryan, all of St. Paul, Minn., on the brief), for plaintiff in error.

Philip Stringer, of St. Paul, Minn. (Thomas D. O'Brien, Alexander E. Horn, and Edward S. Stringer, all of St. Paul, Minn., on the brief), for defendant in error.

Before LEWIS, Circuit Judge, and TRIEBER and KENNAMER, District Judges.

LEWIS, Circuit Judge. Plaintiff in error, who was plaintiff below, brought an action against defendant to recover damages and there was verdict and judgment in favor of the latter. The litigation came on in this way: Nolan-Smith & Co., a Minnesota corporation, had a contract with St. Paul Union Stockyards Company, a corporation, by which Nolan-Smith obtained permission to establish and conduct the business of buying and selling live stock at and upon the premises of the Stockyards Company at South St. Paul, Minn. It was agreed that all live stock consigned to Nolan-Smith should be yarded and fed by the Stockyards Company. Nolan-Smith agreed to collect for the Stockyards Company all charges for yarding and feeding, together with freight and all other charges due said Stockyards Company, or for which Stockyards Company should be liable upon all live stock received at its yards for Nolan-Smith. It was further agreed that Nolan-Smith should furnish a bond for the faithful performance of the contract on its part. The defendant in error carried on a banking business at South St. Paul. It had an insurance department in its bank and had in its employ in that department Karl H. Trout, whose duty it was to solicit insurance of all kinds, including indemnity bonds, such as the contract required of Nolan-Smith. The general practice in that regard was to take from the party who was required to give the bond a written statement, called an application, showing the applicant's financial condition. The form of application used in this case had blank spaces for the different items of assets and liabilities of the applicant and was to be signed by the applicant. Among other things it recited above the space for the applicant's signature that—

"The undersigned applicant for the bond herein described does hereby represent that the statements made herein as an inducement to execute said bond are true."

An application on the form stated was made out, signed by Nolan-Smith & Co., of date January 2, 1921, and then presented by Karl H. Trout to Fitzhugh and Robert A. Burns at St. Paul, who were the agents there of plaintiff in error and who had authority to issue and deliver the indemnity bond required in the contract. On that application the bond was issued and delivered to the Stockyards Company. It was signed by Nolan-Smith & Co., principal, and by plaintiff in error as surety, the latter acting by A. H. J. Mensing as attorney in fact. Mensing was the office manager for Fitzhugh and

Robert A. Burns, and he had authority to execute and deliver this bond. In April, 1922, Nolan-Smith & Co. was adjudged bankrupt, it had failed to meet the obligations of its contract with the Stockyards Company; and plaintiff in error, because of its indemnity bond, was required to pay and did pay $4,700 to the Stockyards Company. It thereupon brought this action against the bank, alleging in its complaint the facts that have been stated and charging therein that Nolan-Smith was insolvent at the time defendant presented application for the bond to its agent and at the time its bond was issued and delivered; that the application was negligently, falsely, fraudulently and deceitfully made out; that the true facts as to the financial condition of Nolan-Smith at that time were well known to the defendant and its agent having charge of the application, or, that the defendant in the exercise of reasonable care and diligence ought to have known that Nolan-Smith was then insolvent and defendant ought to have disclosed that fact to the plaintiff; that defendant negligently, fraudulently and deceitfully concealed from plaintiff the true facts with respect to the financial worth of Nolan-Smith; that plaintiff, in becoming surety on said bond relied on said false, fraudulent and deceitful representations believing them to be true and was thereby deceived and damaged in the sum stated.

The answer, after general denials, admitted that Karl H. Trout was in the employ of the bank and that he transmitted to Fitzhugh and Robert A. Burns, agents of plaintiff, the application of Nolan-Smith, and that the bond mentioned in the complaint was executed and delivered on that application. It alleged that the application was prepared by Nolan-Smith & Co. and from statements made by the officers of that company as to its financial condition, and that Karl H. Trout, believing that the statements contained in the application were true, transmitted the same in good faith to plaintiff's agents.

[1] The court submitted the case to the jury on the issue of defendant's negligence, but declined over objection to submit it as an action of deceit, and the court's refusal to instruct on actionable fraud is assigned as error. There is no substantial dispute about the facts. On November 18, 1920, Trout prepared an application for Nolan-Smith to American Bonding & Casualty Company for an indemnity bond to the Stockyards Company, and the Bonding & Casualty Company issued its bond on that application. In mak-

ing up that application Trout listed therein the assets and liabilities of Nolan-Smith as they were stated to him by an officer of that company. When it came to making application to plaintiff in error for its bond Trout went to Nolan-Smith for a statement, and its president suggested that the financial condition of the company as stated in the application of November 18, 1920, might be accepted by plaintiff in error without the trouble of preparing a new one. He thought it ought to be accepted because less than a month and a half had expired. Mr. Trout then asked Mr. Mensing if the plaintiff in error would be willing to accept the statement of November 18. Mr. Mensing said it would. Thereupon Mr. Trout copied into the application to plaintiff in error the assets and liabilities of Nolan-Smith as they were set up in the application of November 18. It was then signed: "Nolan-Smith & Co., by P. L. Nolan, President, Attest: Ignatius J. Nolan, Secretary"—and as thus made out it was submitted to the office of Fitzhugh and Robert A. Burns and the bond was issued as stated. Mr. Mensing had died before the trial. Mr. Burns testified that Mr. Trout brought the application to the office, that he looked it over with Mr. Mensing and approved it and the bond was issued. He was asked:

"What information did you have before you gave your approval of this bond? A. The application."

He said no investigation was made other than as set out in the application, that the application came from the Drovers' State Bank, it was handling the Nolan-Smith account, and he relied on its knowing the financial condition of Nolan-Smith. The applications of November 18 and January 2 are identical as to items of assets and liabilities. Mr. Trout testified that after Mr. Mensing told him they would accept the statement made in November he copied the items from the November statement into that of January 2, that he got those items in November from officers of Nolan-Smith & Co., that he believed them to be true and that the statement was correct, that he had no reason to suspect they were not correct. There is no testimony that Mr. Trout stated to the agents of plaintiff in error when he delivered the application that he knew the facts therein stated to be true, or even that he believed them to be true. So far as the record shows, the only conversation about the matter occurred between Mr. Mensing and Mr. Trout when the latter went to see if the November statement would be acceptable. That was

brief and was covered by the inquiry and the response of Mr. Mensing that it would be acceptable. Nolan-Smith did their banking business with defendant in error and that fact seems to be the main ground on which liability is claimed. The November 18 statement showed that Nolan-Smith had on deposit with defendant bank on that day $3,675.00. In fact, the bank books showed a balance in favor of Nolan-Smith on that day of more than $10,000. On January 2 Nolan-Smith were overdrawn at the bank, but there is no evidence that Mr. Trout knew that fact. He could have easily ascertained it, but there was no occasion for that inquiry after it was agreed that the November statement would be accepted. Mr. Trout was the only person representing the bank who had anything whatever to do with the transaction, and there is not the slightest proof that he or any of the bank's officers had any intention of misleading or deceiving the plaintiff in error in procuring the bond. No statement or representation as to material facts was made by the defendant. It presented the written application of Nolan-Smith and the bond was issued on that application.

[2] The principles of law to be applied to an action of deceit are well settled. In Union Pac. Ry. Co. v. Barnes, 64 F. 83, 12 C. C. A. 48, 50, this court said:

"Such an action requires for its foundation a false statement knowingly made, or a false statement made in ignorance of, and in reckless disregard of, its truth and falsity, and of the consequences such a statement may entail. The evil intent—the intent to deceive—is the basis of the action."

In Lord v. Goddard, 13 How. 198, 14 L. Ed. 111, Mr. Justice Catron, speaking for the court on this subject, said:

"The gist of the action is fraud in the defendants, and damage to the plaintiff. Fraud means an intention to deceive. If there was no such intention, if the party honestly stated his own opinion, believing at the time that he stated the truth, he is not liable in this form of action, although the representation turned out to be entirely untrue."

This principle has been repeatedly applied here. Schagun v. Scott Mfg. Co., 162 F. 209, 89 C. C. A. 189, and cases there cited; Kimber v. Young, 137 F. 744, 70 C. C. A. 178. For cases in other jurisdictions see Pittsburgh L. & T. Co. v. Life Ins. Co., 148 F. 674, 78 C. C. A. 408; Penn Mut. Life Ins. Co. v. Savings Bank & Trust Co., 73 F. 653, 19 C. C. A. 316, 38 L. R. A. 33, 70; Nevada Bank of S. F. v. Portland Nat. Bank

(C. C.) 59 F. 338. The same rule is applied in the state of Minnesota, where this transaction occurred. In Humphrey v. Merriam, 32 Minn. 197, 20 N. W. 138, the Supreme Court of Minnesota stated the law on the subject, thus:

"Assuming that the alleged representations were made, and that they were untrue (of which facts there was competent evidence), and that they were material (which some of them undoubtedly were), it was incumbent on plaintiff in such an action also to prove (1) that they were *fraudulently* made; and (2) that he believed them, and relied on them in making the purchase. *Deceit* is the type of fraud, and an *intention to deceive* is a necessary element or ingredient. False representations do not amount to a fraud at law in such case unless they be made with a *fraudulent intent*. Of course, to constitute a fraudulent intent, it is not necessary that the party knew them to be false. The intent to deceive may be shown in either of three ways: (1) That the party knew his statements to be false; or (2) that, having no knowledge of their truth or falsity, he did not believe them to be true; or (3) that, having no knowledge of their truth or falsity, he yet represented them to be true of his own knowledge. In the first case there would be a knowingly false assertion as to the fact, in the second as to his belief, and in the third as to his knowledge, of the fact; and in each case the intent to deceive would be a necessary inference. But in each case the *intent to deceive* must exist, and must be proved. If this intention is absent, there is no fraud. Hence if Carver honestly stated what he believed to be the facts, and did not mistake the source or extent of his information, the defendant is not liable in this action. Kerr, Fraud & M. 54, 55 et seq.; Pasley v. Freeman, 2 Smith, Lead Cas. (7th Am. Ed.) 92, and notes; Chandelor v. Lopus, 1 Smith, Lead. Cas. pt. 1, p. 299, and notes; Haycraft v. Creasy, 2 East, 92; Stone v. Denny, 4 Met. (Mass.) 151; Marsh v. Falker, 40 N. Y. 562; Chester v. Comstock, 40 N. Y. 575, note; Meyer v. Amidon, 45 N. Y. 169; Oberlander v. Spiess, 45 N. Y. 175.

The evidence in this case is so voluminous that it is impossible to state it in full, and the different parts of it are so connected that a statement of a portion would give an imperfect and inaccurate idea of the case. But, after reading the whole carefully, we are of opinion that it wholly fails to show that Carver's representations were fraudulently made, that is, made with intent to deceive. We find nothing tending to show that he knew them

to be false, or that he did not honestly believe them to be true, or that he misstated the extent or sources of his information. On plaintiff's own showing it is clear that Carver had never been to the mine, and hence had no personal knowledge of its character and condition, but made his statements upon reports received and information derived from others, and that plaintiff knew that fact."

[3] In the case under consideration there is no evidence that defendant's agent made any statement or representation further than delivering to the agents of plaintiff in error the application of Nolan-Smith, wherein it averred that the statements therein made were true. And it conclusively appears that plaintiff's agents acted solely on that application in issuing the bond. They knew the statements therein as to the financial condition of Nolan-Smith were the statements and representations of Nolan-Smith and not of the bank or its agent. Where the written statement of a third party is presented by one of the parties to a transaction it does not bind the latter as his statement unless he vouches for its truthfulness. In Lundy v. Surls, 144 Iowa, 670, 123 N. W. 337, the vendor in negotiating a sale of real estate delivered to the vendee an abstract of title to the land, which recited that it contained 156.69 acres. After the deal was closed it was found by actual measurement that there were only 132 acres. The trial court instructed the jury:

"If you find that the defendant delivered such abstract to the plaintiff at the time of the negotiations between them, and that at the time he so delivered such abstract he knew that it contained such statement concerning the acreage, and if the plaintiff at the time read such statement in the abstract, then the delivery of such abstract under such circumstances would amount to a representation on the part of the defendant that the tract in question did contain 156.69 acres."

This was held to be error, although the party who delivered the abstract might have known that the statement as to acreage was not true. Those facts would not support an action of deceit.

In Connell v. El Paso Gold Mining & Milling Co., 33 Colo. 30, 78 P. 677, it appeared that Connell sold a mining claim to the Mining & Milling Company. During the negotiations a plat of the claim was presented by Connell which showed that a shaft had been sunk on the claim. The purchaser knew that the plat had been made by a third party. Connell did not represent, of his own knowledge, that the shaft was on the

claim. It was held that he was not liable in an action of deceit.

In Ristvedt v. Watters, 146 Minn. 146, 178 N. W. 166, one of the parties to an exchange of real estate presented during the negotiations typewritten sheets describing the condition and character of the land. The other party knew that these sheets had been prepared by a prior owner of the land. The court in that case said:

"The representations concerning the character and condition of the land were contained in certain typewritten sheets presented to George O. Ristvedt during the negotiations preceding the making of the contract. It is not claimed that these representations were true, but they were copied from applications for loans made by prior owners of the land, which fact was communicated to George O. Ristvedt when they were presented to him, and defendant contends that, having disclosed the source of his information, he is not answerable in damages because the information proved to be untrue. If the evidence showed nothing more, his position would undoubtedly be well taken. Humphrey v. Merriam, 32 Minn. 197, 20 N. W. 138; Petrie v. Clarke, 126 Minn. 119, 147 N. W. 1097."

See also People's National Bank v. Central Trust Co., 179 Mo. 648, 78 S. W 618; Jeffries v. Stromme, 164 Minn. 45, 204 N. W. 541.

There is no evidence tending to prove a general and well known custom or practice that the agent, before presenting an application, should investigate and find out whether the statement of facts contained in it were true. What evidence there is on the subject has a contrary tendency, that it was not the custom or practice for the agent to do so.

No point has been made that the complaint contains but one count, and plaintiff is contending the court erred because it did not submit issues on two different and distinct causes of action; and so we pass that question. On the facts in the record there is no proof that would sustain a finding that defendant made false representations with intent to mislead and deceive the plaintiff, nor could that intent be reasonably inferred from the circumstances of the transaction. The court did not err in refusing to submit that issue.

Error is assigned that the court permitted Karl H. Trout to testify to the conversation he had with Mr. Mensing about accepting the November 18 statement instead of obtaining a later one from Nolan-Smith as of the date of the application. Mr. Mensing was deceased and the Minnesota statute is relied on. The statute, section 9817, Gen. Stat. 1923, so far as material, is this:

"It shall not be competent for any party to an action, or any person interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a deceased or insane party or person relative to any matter at issue between the parties."

[4] The competency of a witness testifying in any civil action in the courts of the United States is determined by the laws of the state in which the court is held. R. S. § 858 (U. S. Comp. Stat. § 1464) This Minnesota statute has been considered and construed by the Supreme Court of that state. In Darwin v. Keigher, 45 Minn. 64, 47 N. W. 314, the court said:

"Our statute extends the rule of the common law as to the competency of witnesses, and, in general, neither the parties to an action nor those who may be interested in the event of it are excluded from being witnesses. This general rule is, however, qualified by the provision that 'it shall not be competent for any party to an action, or interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a deceased or insane party or person, relative to any matter at issue between the parties.' Gen. St. 1878, c. 73, § 8. The plaintiff's agent was competent to testify as to the contract unless he was either a party to this action or was interested in the event of it, and hence within the above-recited statute. He was not a party, but a stranger, to the action; nor was he, so far as appears, 'interested in the event thereof.' The meaning of this language, used in respect to the competency of persons to testify, was well understood when the rules of the common law were changed by statute; and it bears the same meaning in the statute as when used under the common law with reference to the same subject. Referring to this statute, it was said in Marvin v. Dutcher, 26 Minn. 391, 4 N. W. 685, that, to exclude one as a witness on the ground of interest in the event of the litigation, 'it must appear that he has something to gain or lose by the direct legal operation and effect of the judgment to be rendered therein, or that the record thereof can be used for or against him, as evidence upon the fact of partnership (to which the testimony was directed) in some other action or proceeding in which it may be brought in question.' This is in accordance with the common-law rule as to the disqualification of interested witnesses. 1

Starkie, Ev. 103, 107; 1 Greenl. Ev. §§ 386, 389, 391. While we have set aside the common-law rule that persons interested in the event of an action are generally disqualified from testifying therein, we have preserved that rule of disqualification to the extent of declaring that persons interested in the event of the action shall not be permitted to testify as to conversations with or admissions of deceased parties or persons, relative to the matter in issue. As to the ground of disqualification, as to the nature of the interest which renders a person incompetent, the statute has not 'been changed, but has been framed in accordance with the common law. But at common law the agents of the parties to actions were not, by reason of their agency, deemed to be interested in the event, nor rendered incompetent to testify concerning their doings in behalf of their principals."

Starkie on Evidence, vol. 1, p. 103 et seq., discusses at length the rule at the common law on the incompetency of a witness because of his interest in the subject-matter in litigation. He says it is the general rule that where a servant acts for his master in the common course of business he is competent from the necessities of the case, that—

"The rule extends to all acts done by the agent, as far as he acts according to the direction of his principal in the usual course of business. But where an action is brought against the principal for the negligence of his agent, and evidence has been given of such negligence, the agent is in general incompetent without a release, for there the verdict against the principal would be evidence in an action brought by him against the agent and the exception from necessity does not apply, because culpable acts of negligence and misconduct are not to be considered as arising in the common and ordinary course of dealing."

In support he cites Morish v. Foote, 2 Moore, 508, which was an action for negligently driving a mail coach against the plaintiff's wagon. The wagoner was held to be incompetent although he swore that he left sufficient room for defendant's mail coach, and although the jury found by their verdict that he was not to blame. And so, he announces the rule that where the witness would be liable over to the party calling him, in respect of some breach of duty on the part of the witness involved in the issue, he is then an incompetent witness.

Relying upon this rule at the common law it is argued that Trout was interested in the result of the litigation, which charged his principal with negligence, and in the record to be made in the case, because he would be liable over to his principal and the record would be evidence against him of the damages which his principal had sustained. It is further said that in the two Minnesota cases cited above the actions were not for negligence against the agent's principal. The adjudications here, state and federal, have not followed, to its full extent, the rule as it is stated by Starkie. They give greater emphasis to the necessities of the situation, and appear to hold that the disqualifying interest is an interest of the witness in the result of the cause on trial, by which he would suffer direct and certain gain or loss; that if he have "an interest only in the question, and not in the event of the suit, he is competent." Evans v. Eaton, 7 Wheat. 356, 425, 5 L. Ed. 472; Owings v. Speed, 5 Wheat. 420, 5 L. Ed. 124; Cookendorfer v. Preston, 4 How. 316, 11 L. Ed. 992; Strafford Bank v. Cornell, 1 N. H. 192; United States Bank v. Stearns, 15 Wend. (N. Y.) 315; Franklin Bank v. Freeman, 16 Pick. (Mass.) 535. In Owings v. Speed, Chief Justice Marshall, speaking for the court, said:

"It is so apparent, that the witness had no interest in the suit in which he was examined, and it is so well settled, that only an interest in that suit could affect his competency, as to make it unnecessary to say more, than that the court committed no error in permitting his testimony to go to the jury."

In the Strafford Bank Case Cornell was sued in assumpsit on a lost note. The bank called as a witness its cashier, and it was objected that he was incompetent because his testimony might tend to discharge him from being liable for his negligence. The court said:

"It is a general rule that all witnesses interested in the event of a cause are to be excluded from giving evidence in favor of the party to which their interest inclines them. But this general rule has exceptions, and it is the constant practice to admit agents to be witnesses for their principals, and servants for their masters, without a release, although their evidence may tend to discharge themselves. This exception is allowed from necessity, and for the sake of trade and the common usage of business. The witness in the present case comes within the exception. The cashier of a bank is the agent and servant of the corporation, who transacts a great portion of this business, and when a paper has been lost by accident, or any overpayment has been made by mistake, is often the

only person who can explain how it may have happened, and it would be extremely inconvenient to deprive the corporation of his testimony in every case when he may by possibility be presumed to be liable for negligence."

The facts in United States v. Stearns, 15 Wend. (N. Y.) 315, are like those in the Strafford Case. The witness was held competent.

In the Franklin Bank Case the bank called its cashier as a witness. Again it was argued that the cashier would be personally liable to the bank in event it failed to recover against Freeman, and for that reason he was not a competent witness. In response to the contention it was said:

"If the plaintiffs should recover, it will be for their own use. If the plaintiffs should fail, and if they should sue the witness upon his bond for misconduct in his office of cashier, this verdict could not be given in evidence for or against him. The plaintiffs would be required to support their action, and the defense would be sustained, by other evidence."

The action there was assumpsit to recover the amount of two checks which the cashier had accepted.

In the Cookendorfer Case the action was against the indorser on a note, and there was a question whether the notary who made the protest had acted in time. The note had been left at the bank for collection and it called the notary to make the protest. He was called as a witness and it was urged that he was incompetent as such. For the purpose of binding the indorser it was claimed he was the bank's agent, and that a bank which receives a note for collection is liable as for negligence if it fail in taking the proper steps to charge the indorser. Cases were cited to sustain the point. It was further argued that the notary was also liable directly to the holder of the paper for negligence, and thus incompetent. The court said:

"A notary is a competent witness on the same ground that other agents are admissible. They are always responsible to their principals for gross negligence, and yet, from the necessity of the case, they are competent witnesses to prove what they have done in the name of their principals."

[5] The plaintiff called Trout as a witness and announced that it did so for cross-examination. We presume this was done under the Minnesota statute which we considered in Davidson S. S. Co. v. United States, 142 F. 315, 73 C. C. A. 425. That statute provided that a party might call for cross-examination

the directors, officers, superintendents or managing agents of a corporation, on the ground that they were adverse witnesses. We sustained the statute as being applicable to procedure in the federal court. Plaintiff's counsel interrogated Trout at length and in great detail about the entire transaction. While being so examined Trout said that he went to Mr. Mensing and inquired whether they would write the bond on the strength of the November 18 statement, and they said they would. Counsel for plaintiff moved that the answer be stricken, because Mr. Mensing was then deceased. Trout later repeated his conversation with Mr. Mensing in answer to questions by defendant's counsel, to which objection was made and exception saved. There was no other witness by whom the conversation could be established, and it was most material to defendant's defense. The reason for the rule of necessity permitting an agent to testify is here demonstrated; and the agent, not having a disqualifying interest in the litigation, was a competent witness. The assignment is without merit.

The judgment is affirmed.